# JOSEPH JAMES BOSLEY *v.* STATE OF MARYLAND

[No. 145, September Term, 1971.]

*Decided January 21, 1972.*

84

The cause was argued before MORTON, CARTER and GILBERT, JJ.

*Dennis C. McCoy* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Devy Bendit* and *Sandra O'Connor, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Joseph James Bosley, the appellant, was indicted for rape, burglary, and two counts of shoplifting and attempted false pretenses. The jury found him not guilty of the rape and burglary charges and convicted him of shoplifting and attempted false pretenses from Charles Center Men's Wear, Inc., the corporate name of Ham-

burger's. He was sentenced to 18 months for the shop-
lifting conviction and three years for the attempted false
pretenses conviction, the sentences to run concurrently.
At the conclusion of sentencing, Judge James W. Murphy
of the Criminal Court of Baltimore referred the appel-
lant to Patuxent Institution for an evaluation. Appellant
appeals from the convictions and the referral to Patuxent
Institution.

The record indicates that on July 11, 1970, at 5:20
a.m. an assailant broke into the home of Lillian Trovato,
raped her and took a wallet and credit cards from her
pocketbook. Later the same morning a man, identified as
the appellant, attempted to purchase, through the use
of a credit card issued to Frank A. Trovato, $86.26
worth of men's clothing from Fosset Men's Store in Bal-
timore City. Mr. Lawrence Greenbaum, a partner of
Fosset's, testified that he became suspicious when the
appellant, a black man, presented the credit card with
an Italian name. Greenbaum accompanied appellant to
his place of employment in the Baltimore City Hall
where he attempted to have an employee there identify
him as Trovato. There was no one in City Hall to identify
the appellant so they returned to Fosset's. Appellant
left the clothes he had ordered to be altered. To further
check appellant's possession of the credit card, Green-
baum called the telephone number of Frank A. Trovato.
Mrs. Trovato answered and told him about the rape and
theft. Greenbaum immediately notified the police who
then went to Fosset's to arrest appellant when he re-
turned. Appellant was arrested, however, prior to re-
turning for the clothing.[1]

Upon leaving Fosset's, appellant proceeded to Ham-
burger's to continue his shopping. He was waited on by
Mr. Herbert Greenberg who stated that while appellant
was looking at the merchandise in the store, he sud-
denly decided to buy two watches. "* * * [H]e was walk-

---

1. The indictment charging attempted false pretenses and shop-
lifting from Fosset's was dismissed at the conclusion of the trial
because of a defect in the indictment.

ing around and he saw some watches and he said he would take two watches which we thought was quite unusual for a gentleman to buy two watches that quickly and he said he had plenty of credit and there would be no problem." Greenberg further stated that he was also surprised when he saw that the credit card appellant offered had been issued in an Italian name.

Robert Toner, the general manager of Hamburger's, testified that he saw the sales ticket being written up and also became suspicious as the Master Charge card being used was issued in the name of Trovato. He asked a salesgirl to accompany appellant to the credit office and left the store for lunch. When he returned he found that the appellant had hurriedly left the store without taking the watches.

Officer Robert Bandel, one of the arresting officers, testified that on the basis of a radio alert he arrested the appellant at 1:45 p.m. on North Howard Street. At the time of the arrest appellant was wearing gold pants, a black shirt, brown sport coat and a brown t-shirt under his black shirt. Officer Glenn Broussard, who accompanied Officer Bandel, testified that at the time of the arrest he found a wallet in appellant's left rear pocket which contained three credit cards in the name of Trovato.

The appellant testified that his brother-in-law had a friend whom he knew as Frank A. Trovato. Appellant said that the man he knew as Trovato was a drug addict and that he, appellant, had lent him money on several occasions. He stated that he met Trovato, who was also known as "Reds", on the morning of July 11 and that Reds lent him two credit cards in return for $30. Appellant admitted going to Fosset's but claimed he told Greenbaum that his name was Bosley and that he was using the Trovato credit card with permission. Appellant also claimed that he only intended to buy one watch at Hamburger's and that he left Hamburger's while they were checking his credit because it was taking too long a time and he intended to return later.

The appellant first contends that his arrest was illegal

and, accordingly, his motion to suppress evidence seized from his person at the time of his arrest should have been granted. He concedes that the police may have had reliable information that appellant had committed a misdemeanor at Hamburger's but, he argues, there is nothing in the record to show they had information that a felony had been committed and in the absence of such a showing, the police had no authority to make the warrantless arrest.

The record shows that at 5:30 a.m. on the day appellant was arrested a police officer responded to a call from the Trovato home to investigate the rape and burglary which had occurred there. The officer was given a description of the assailant by the Trovatos and, after broadcasting the description over his patrol car radio and canvassing the area in search of the assailant, he took Mrs. Trovato to be examined by a police physician. It is perfectly clear, therefore, contrary to appellant's assertion, that the police department had knowledge that the felonies of rape and burglary had been committed at the Trovato home.

The arresting officers testified that they had received over the police radio the following broadcast: "* * * wanted for investigation of rape and he may be armed, one Negro male, approximately five five to five six, thin built, wearing the trousers he was wearing, gold, black shirt and a brown sport coat." The officers had information that the suspect "had credit cards in his possession which were stolen in the name of Frank Trovato." One of the arresting officers further stated that as he approached the appellant in the course of the arrest, a "wallet was visible from my point of view and there was what appeared to be credit cards sticking from the opening of the wallet." A search of the appellant at that time revealed that there were in fact three credit cards in the wallet in the name of Frank A. Trovato.

It is, of course, well settled that a report of a felony and a description of the perpetrator over a police radio may furnish probable cause for an arrest and it is not

essential that the arresting officer himself have probable cause for the arrest where another member of the police team has probable cause and the arresting officer has been alerted over the police radio to make the arrest. *Hebron v. State,* 13 Md. App. 134.

It is clear from the record before us that the police department had reliable information that the felonies of rape and burglary had been committed and that there was probable cause to believe that appellant was the perpetrator. That he was subsequently acquitted of these crimes is of no consequence for in making an arrest, it is probable cause, not certainty beyond a reasonable doubt, that determines its legality. *Johnson v. State,* 8 Md. App. 187; *English v. State,* 8 Md. App. 330. The trial judge, therefore, properly refused to suppress the evidence seized from appellant at the time of his arrest.

After appellant's arrest, he was placed in a line-up. At the trial below the presiding judge ruled that the line-up was improperly conducted because appellant was not advised of his right to the presence of counsel and excluded all testimony relating to identifications of appellant made at the line-up. Appellant now contends that the in-court identification of him by Greenberg was tainted by the "illegal confrontation" at the line-up. He argues that when asked by the trial judge if his identification was based on his seeing appellant at the line-up or in the store, Greenberg answered "Yes." The witness immediately cleared up his confused answer, however, when he testified that he had observed the appellant in the store from a distance of 4 or 5 feet, under good lighting conditions, for a period of approximately 20 minutes. We think the presiding judge was entirely correct in his finding that Greenberg's identification stemmed from his observation of appellant at the scene of the crime and did not result from his observance of appellant at the illegal line-up. See *Austin and Williams v. State,* 12 Md. App. 629.

Appellant next urges that his conviction of attempted

false pretenses merges with his conviction of shoplifting (Md. Code, Art. 27, § 551A (a) (2) ).

In *Polisher v. State,* 11 Md. App. 555, the elements of the crime of false pretenses were specifically set out. Thus, a false pretense is committed when a chattel, money or valuable security is obtained from another by making a false representation of a past or existing fact with intent to defraud and with knowledge of its falsity. Md. Code, Art. 27, § 140. Since an attempt to commit an offense constitutes a common law misdemeanor, *Fisher v. State,* 1 Md. App. 505, there is, of course, no requirement that the goods or chattels actually be obtained to sustain a conviction for attempted false pretenses. The gravamen of this offense is the intent to cheat or defraud, *Waye v. State,* 231 Md. 510, or, as otherwise stated, the false pretense is the crux of the crime. *Polisher, supra.*

Shoplifting under the value of $100 is a misdemeanor under Md. Code, Art. 27, § 551A and § 551A (a) (2) makes it unlawful for any person "to attempt to obtain possession of any goods, wares or merchandise, by charging the same to a real person without the authority of such person." Thus, the essence of the crime is unauthorized use of the credit of another person.

The test of whether one conviction merges into another is whether one crime necessarily involves the other. *Parker v. State,* 7 Md. App. 167, 195, cited in *Price v. State,* 261 Md. 573. If it is necessary to prove common elements to sustain convictions under both charges, then the defendant should not be "twice punished for the same acts whether the offenses charged by reason of such acts be deemed to be inconsistent, duplicitous or to have merged." *Tender v. State,* 2 Md. App. 692, 700. To determine if two offenses merge, the "thrust" of the offenses must be determined. *Price v. State, supra.*

Although it is established that two separate criminal charges will not necessarily merge if they are successive steps of the same transaction, *Chittum v. State,* 1

Md. App. 205, citing *Veney v. State*, 227 Md. 608, it must also be recognized that if the two offenses charged are so close in scope, intent and thrust, as here, then they must be considered merged.

In the instant case, appellant's statement to the personnel at Hamburger's that he had "plenty of credit" and his implicit representation that he was Trovato were merely steps preparatory to his presenting the Trovato credit card. He intended ultimately to obtain the two watches. Since his claim that he had enough credit and that he was Trovato would not have been enough to purchase the watches, we find that the conviction of attempted false pretenses merged with the conviction under § 551A (a) (2).

We find no merit in appellant's next contention that he was prejudiced by leading questions, propounded by the trial judge, to one of the State's witnesses. Specifically, the witness Greenberg had testified that the Italian name on the credit offered by appellant was "Danittio." The court then had the credit cards shown to the victim who corrected himself and identified Trovato as the name he saw. Assuming, *arguendo*, that the questions and procedure were improper, the evidence brought out was merely cumulative since another employee of the store testified as to appellant's use of the Trovato credit card in Hamburger's. Thus, if it were error it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18.

Contrary to appellant's contention, it is apparent from the factual recitals heretofore that there was legally sufficient evidence to sustain the conviction.

Appellant next contends that the court's instructions were confusing and misleading in that the court instructed the jurors that they could find him guilty of both shoplifting and attempted false pretenses and did not instruct them "that they could find him not guilty of one but guilty of the other * * *." There is no factual basis for the contention since the court instructed the

jury in the following manner: "Under Indictment 4130 of 1970 you may find the defendant not guilty of Counts 1 and 2 or you may find the defendant guilty of either the two counts or you may find the defendant guilty generally of that indictment that is of both counts." Thus, it is clear that the court did instruct the jury as appellant now contends that he should have. Appellant assigns additional error in the court's instruction that the jury "must find the appellant guilty if they did not believe that he believed himself to have authority to use the credit cards * * *." There is no factual basis for this contention either. What the judge actually said follows: "If you believe that the defendant thought that he was authorized to use the credit cards and presented these cards, believing that he was so authorized and that the bills would be paid, then the defendant would not be guilty of attempted false pretenses even though he represented himself to be the person to whom the credit cards were issued." We find the contention that the instructions were so confusing as to require a new trial to be without merit.

Appellant's final contention that the order referring him to Patuxent Institution for a diagnostic evaluation was illegal is not properly before this Court. The appeal here is from the judgment of conviction and the referral order was an action or proceeding in the lower court separate and distinct from the criminal proceeding leading to appellant's conviction. In any event, we have heretofore held that an individual "has an opportunity to contest his determination of defective delinquency but he has no statutory right to contest the order of the judge that he undergo such an examination." See *Wise v. Director,* 1 Md. App. 418, 423.

> *Judgment as to first count, affirmed.*
> *Judgment as to second count, vacated as merging into the first count.*