## WILLIAM EDWARD YOUNG *v.* STATE OF MARYLAND

[App. No. 78, September Term, 1975.]

*Decided November 3, 1975.*

Before ORTH, C. J., and MOYLAN and LOWE, JJ.

ORTH, C. J., delivered the opinion of the Court.

Unlike the usual situation, in which a determination of

defective delinquency is stridently protested and vehemently fought, we have here a felon, convicted and incarcerated, who believes he is a defective delinquent and is aggrieved because an examination and evaluation he seeks to establish it have not been afforded him.

## STATEMENT OF THE CASE

On 9 May 1967 at a bench trial in the Circuit Court for Baltimore County,[1] William Edward Young was convicted of murder in the first degree and assault with intent to rape. On 12 May 1967, a life sentence was imposed on the murder conviction and a concurrent sentence of 20 years on the aggravated assault conviction. The judgments were affirmed on direct appeal. *Young v. State,* 4 Md. App. 286 (1968), *cert. denied* 251 Md. 753.

Following the penalty stage of the trial, the court ordered that Young be examined to determine if he was a defective delinquent. Upon evaluation by the Patuxent Institution Staff he was determined not to be a defective delinquent, and on 14 September 1967 the court ordered that he be transferred to the Maryland Penitentiary with full credit for time spent in Patuxent.

After several collateral attacks on the judgments entered on the substantive offenses, in the main unsuccessful,[2] there was filed, on 10 June 1975 in the Circuit Court for Baltimore County, in proper person, over Young's signature, a "Motion

---

1. Hereinafter "court" shall mean the Circuit Court for Baltimore County unless otherwise indicated.

2. On 24 June 1970 Young attacked the judgments by way of a petition under post conviction procedures. Relief was denied by order of the court issued 30 March 1971, and application for leave to appeal therefrom was denied by this Court. Young v. Warden, No. 37, September Term, 1971, filed 8 September 1971, unreported. On 6 April 1971 he filed another petition under the Uniform Post Conviction Procedure Act, and on 7 May 1971 the petition was dismissed by order of the court. On 6 October 1971 he petitioned for the issuance of a writ of habeas corpus. On 18 November 1971, the court refused to issue the writ, and on 27 January 1972 we dismissed an application for leave to appeal therefrom. On 4 March 1974 he filed another post conviction petition. On 8 March 1974 the court found that Young was entitled to the relief therein prayed, and, in furtherance thereof, directed the Clerk of the court to issue an amended commitment so that the sentence imposed in each of the murder case and the assault case commenced as of 20 October 1966.

for Court Order for Examination at Patuxent Institution." [3]
He noted in the Motion that, upon being sentenced, the court
on its own motion referred him to Patuxent Institution for
evaluation and that he "was at that time not recommended
for commitment to Patuxent by the staff thereof and was
then returned to the Department of Corrections." He alleged
that "in the interim eight (8) years of confinement at
the Maryland Penitentiary [he] has regressed both
psychologically and emotionally to the point where he now
fits the description of a defective delinquent and meets the
criteria established therefor as defined in Section 5 of
Article 31B, Annotated Code of Maryland." He explained
that "the nature and attendant circumstances of the crimes
for which [he] was tried and convicted and for which he has
been and remains confined have had recurrent and
regressive psychological ramifications for [him]." Claiming
that there was "ample reason to believe" that he was a
defective delinquent, he prayed the issuance of an ap-
propriate order pursuant to the provisions of Code, art.
31B, for examination and reevaluation at Patuxent. The
court denied the Motion by an order issued 9 June 1975 and
filed the next day. [4]

In a memorandum opinion included in its order, the court
referred to Code, art. 31B, § 7 (a):

" 'If the substance of the report (request for
examination) is that the said person is not a
defective delinquent, he shall be retained in custody
of the Department of Correction under his original

---

**3.** The motion was accompanied by a "Motion for Leave to Proceed in
Forma Pauperis and Request for Assignment of Counsel", supported by
affidavit.

**4.** It seems that a similar motion had been filed in the court by Young on
9 October 1973. He alleges that he received no response thereon. On 13
December 1974 he filed a "Petition for Writ of Mandamus" in this Court,
and we denied it on 17 December for lack of jurisdiction. He sought a writ of
certiorari by the Court of Appeals from our denial, and on 29 January 1975
that Court declined to issue it. There followed the Motion stamped as
received in the Circuit Court for Baltimore County on 10 June 1975.
Patently, in light of the date of the order denying it, the court had it in its
possession before it was formally entered in the court records.

sentence as if he had not been examined for purposes of defective delinquency.' "

It quoted *Eggleston v. State*, 209 Md. 504, 511 (1956):

" 'It would appear that under this sweeping language, *jurisdiction, once properly obtained would continue until the purposes to be served by the examination were accomplished,* regardless of the original sentence.' (Emphasis added)"

It ruled:

"Applying the above statute and judicial language, this Court can only conclude that once the examination was completed and a determination had been made that Mr. Young was not a candidate for the Patuxent Institution, the Circuit Court for Baltimore County lost its statutory jurisdiction under Article 31B.

Therefore, this Court is persuaded that any further requests for examination should be addressed by Mr. Young to the Department of Correctional Services and not to this Court."

On 3 September 1975 Young, in proper person, applied for leave to appeal from the order of 9 June 1975.

### THE STATUS OF THE APPLICATION FOR LEAVE TO APPEAL

The Court of Special Appeals has only such jurisdiction as the General Assembly grants it.[5] From its inception, it was

5. By amendment to art. IV, §§ 1 and 14A of the Constitution of Maryland, proposed by Acts 1966, c. 10 and ratified 8 November 1966, there were included in the Judicial power of this State "such intermediate courts of appeal, as shall be provided by law by the General Assembly . . .", leaving details to be established by statute. By Acts 1966, c. 11, codified as art. 26, § 130, now Courts Art. § 1-401, the General Assembly created an intermediate court of appeal to be known as the "Court of Special Appeals." The history of its creation is traced in 1 Maryland Appellate Reports, pages V — LXXIX. Its jurisdiction at first was in the main confined to criminal cases from the circuit courts and the Criminal Court of Baltimore where the sentence was other than death. The General Assembly gradually expanded the jurisdiction, however, so that today it embraces virtually all direct

given appellate review of any defective delinquent proceeding. Acts 1966, c. 12, §§ 1 and 5, codified as art. 31B, §§ 11 and 12. See Courts Art. § 12-308, formerly Code, art. 5, § 5 C, as amended from time to time. A party in a defective delinquent proceeding, however, does not have an absolute right of appeal. There are separate statutory provisions regarding such proceedings which render inapplicable Courts Art. § 12-301, providing generally for the right of appeal from final judgments. These statutory provisions are codified as art. 31B, § 11, and implemented by Maryland Rule 1094.

Code, art. 31B, § 11, provides, *inter alia*: "From any court order issued under the provisions of § 9, or of § 10, within thirty (30) days after the passage of the order, application may be made to the Court of Special Appeals for leave to appeal from the order." Thus, the appellate review of a defective delinquent determination, for an indigent or non-indigent, is discretionary with this Court. *Carter v. Director*, 10 Md. App. 247, 250 (1970).[6]

Not only is the right to appeal qualified, but what may be appealed from is limited. As we have indicated, application for leave to appeal authorized by § 11 may be made only from "any court order issued under the provisions of § 9, or of § 10 . . . ." Section 9 provides for an order by the trial

appeals from the circuit courts of the counties and the Supreme Bench of Baltimore City. Courts Art. § 12-308. See Acts 1970, c. 99, § 2; Acts 1972, c. 361, § 2 and c. 392, § 2; Acts 1973, c. 56, § 2. For exceptions see Courts Art. § 12-307.

6. The limitations on the absolute right of appeal are not constitutionally offensive. Director v. Daniels, 243 Md. 16 (1966); Rice v. Director, 238 Md. 137 (1965); Walker v. Director, 6 Md. App. 206.

Courts Art. § 12-202 provides: "No review by way of certiorari may be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted: . . . (2) Leave to prosecute an appeal in a defective delinquent proceeding; . . . ."

Code, art. 31B, § 11 further provides: "The application for leave to appeal shall be in such form as the Court of Appeals may, by its rules, prescribe." Maryland Rule 1094, § a deals with the application — how it is to be made and the time for the filing of it, subsection 1; the content of it, subsection 2; what the record shall contain, subsection 3; the service of the application, subsection 4. Section b authorizes this Court to require additional information, including any portion of the stenographic transcript of the trial. Section c spells out the procedure if leave to appeal is granted.

court when upon hearing the court or the jury, as the case may be, finds the defendant (1) not to be a defective delinquent, subsection (a), or (2) to be a defective delinquent, subsection (b). Section 10 (a) provides for an order by the trial court upon a redetermination of defective delinquency when the defendant is found by the court or jury upon hearing (1) to be a defective delinquent, or (2) not to be a defective delinquent. It is clear that the application for leave to appeal before us is not within the ambit of § 11. The order here sought to be reviewed is not one entered by the trial court upon a determination or redetermination by the court or the jury upon hearing that Young is or is not a defective delinquent. Rather, it is from a denial of a motion by Young to be examined and evaluated for possible defective delinquency. We have previously held that there is no statutory right to contest the order of the court below that a defendant undergo an examination for possible defective delinquency. *Bosley v. State,* 14 Md. App. 83, 91 (1972). We now hold that there is no statutory right to contest an order of the court below denying a request that a defendant undergo an examination for possible defective delinquency. There is no authority to permit an application for leave to appeal from such an order. We conclude that the application by Young must be dismissed as not allowed by law.

## REQUEST FOR EXAMINATION FOR POSSIBLE DEFECTIVE DELINQUENCY

Our holding disposes of this appeal. But we think it advisable for the guidance of the lower court in its future considerations to give our view were we to decide the case upon its merits. See *Larsson v. J. C. Conley Constr. Co.,* 260 Md. 21 (1970); *Rossen v. Novak,* 259 Md. 508 (1970).

It is patent that Young, having been convicted and sentenced in a court of this State, for a crime committed after 1 January 1954, coming under one or more of the categories designated by Code, art. 31B, § 6 (a)[7] was a

---

7. Five categories are set out:

"(1) a felony; (2) a misdemeanor punishable by imprisonment in

person with respect to whom a request may be made for examination for possible defective delinquency. Section 6 (b) expressly authorizes the person himself to make a request for such examination.[8] When a request for examination is made "the court may order such person to be examined by the institution for defective delinquents to ascertain if he or she is a defective delinquent." *Id.* With two exceptions, there is no limitation as to when a request for examination may be made. "Such an examination may be requested and made at any time after the person has been convicted and sentenced for a crime or offense specified hereinabove in this section, provided that the said person has been sentenced to a period of confinement in a penal institution or is then serving such a sentence. No such examination shall be ordered or made if the said person has been released from confinement for the particular crime or offense of which he was convicted or who is within six months of the expiration of his sentence." Section 6 (c). Section 6 (d) provides in relevant part:

> "The request for such an examination shall be by petition filed with the court having custody of or jurisdiction over the said person, stating therein the reasons for suspecting or supposing the presence of defective delinquency in the said person."

Section 6 (e) prescribes, among other things, the jurisdiction of the defendant: "The court which last sentenced the defendant, whether or not the term of court in which he was sentenced has expired shall retain jurisdiction of the

---

the penitentiary; (3) a crime of violence; (4) a sex crime involving: (a) physical force or violence, (b) disparity of age between an adult and a person under eighteen years of age, or (c) a sexual act of an uncontrolled and/or repetitive nature; (5) two or more convictions for any offenses or crimes punishable by imprisonment, in a criminal court of this State."

8. Request may be made also by "the Department of Correction or by the State's attorney or assistant State's attorney who prosecuted the person for a crime or offense specified hereinabove in this section, or any knowledge or suspicion of the presence of defective delinquency in such person," and by such person's attorney in his behalf. The court may order the examination on its own initiative. Art. 31B, § 6 (b).

·defendant for the purpose of any of the procedures specified in §§ 6, 7, 8 or 9 hereof, except that the Criminal Court of Baltimore City and the Circuit Court of Anne Arundel County shall for such purposes have jurisdiction of a person last sentenced by the Municipal Court of Baltimore City and the People's Court of Anne Arundel County, respectively." [9] It is specified in § 7 (a) that "If the substance of the report is that the said person is not a defective delinquent, he shall be retained in the custody of the Department of Correction under his original sentence as if he had not been examined for possible defective delinquency." Section 7 (a) further concerns who shall make the examination and the report of its findings, and § 7 (b) permits additional examinations by a practitioner of psychiatry of the subject's own choice in certain cases. Section 8 (a) requires a hearing when the report of the institution for defective delinquents reports that the person examined is a defective delinquent and §§ 8 (b) and (c) relate to the procedural aspects of the hearing.

We conclude that Young's petition for examination was fully in accordance with the law above summarized. Eligible to be a defective·delinquent by reason of his conviction and sentence, Young filed his request for examination of possible defective delinquency in proper form in the court having jurisdiction over him as the court which last sentenced him, within the time such requests may be made. Although it is within the discretion of the court to order an examination upon proper request,[10] we think that such discretion must be soundly exercised. The judge below did not exercise this discretion.[11] He found the court did not have jurisdiction to entertain the request for examination and suggested that any further requests be addressed "to the Department of

9. It seems that amendment is required to reflect the status of the District Court of Maryland.

10. As we above indicated § 6 (b) states: "Whenever a request for examination comes from any such source the court *may* order such person to be examined by the institution for defective delinquents to ascertain if he or she is a defective delinquent." (emphasis added)

11. The court had the statutory jurisdiction and duty to entertain the request but the grant of it was within its sound discretion.

Correctional Services and not to this Court." He was wrong. It is correct that upon the initial opinion of Patuxent that Young was not a defective delinquent, the Department of Correctional Services retained custody of him under his original sentence as if he had not been examined for purposes of defective delinquency. But, the law is clear, as our reference to § 6 (e) shows, that "The court which last sentenced the defendant, whether or not the term of court in which he was sentenced has expired shall retain jurisdiction of the defendant for any purpose of any of the procedures specified in §§ 6, 7, 8 or 9 . . . ." It is only that court which can order an examination. The Department of Correctional Services is without authority to do so, and a request to it for examination is not permitted by the law, is not contemplated by the law and would, therefore, in any event, be futile. The language of *Eggleston v. State, supra,* quoted by the court below does not support its conclusion. The "sweeping language" referred to in *Eggleston* is that portion of § 6 (e) which we above set out.

The short of it is that we think that Young's request for an examination for possible defective delinquency was properly before the Circuit Court for Baltimore County. The court should have disposed of the request by a sound exercise of judicial discretion directed to the end of accomplishing the manifest purposes of the defective delinquency law. We observe that a request may be made "on *any knowledge or suspicion* of the presence of defective delinquency" in a person, § 6 (b), and that the request need state only "the reasons *for suspecting or supposing* the presence of defective delinquency. . . ." § 6 (d). (emphasis added).

*Application for leave to appeal dismissed.*