MATHEW P. KOSSAKOWSKI

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 9, 1899.*

1. CRIMINAL LAW—*allegation of corporate existence does not require proof of legal organization.* An allegation, in an indictment of an express company's agent for embezzlement, that the company is a joint stock association and a corporation under the laws of New York, is *prima facie* established by proof that it had a known and recognized *de facto* existence in Illinois as a corporation.

2. SAME—*embezzlement is committed where the conversion or failure to account takes place.* The venue of an indictment charging embezzlement, consisting in the failure to account, may be laid in the State and county where the accused was under obligation to account.

3. SAME—*demand need not be proven where accused had absconded.* Where the disappearance of an express company's agent from his

place of business makes it impossible for the company to demand settlement of him for the proceeds of the sale of express orders which he had appropriated, the People may prove the conversion otherwise than by demand and refusal.

4. SAME—*embezzlement of proceeds of sale of money orders by express agent—what need not be proved.*   On the trial of an express agent for embezzling the proceeds of the sale of money orders it is not necessary to prove that the company has paid the orders, if the facts proven establish the liability of the company to honor the orders.

5. SAME—*each criminating fact need not be proven beyond a reasonable doubt.*   Each criminating fact relied upon need not be proven beyond a reasonable doubt, as it is sufficient if, upon the whole evidence, the jury are satisfied, beyond a reasonable doubt, of the defendant's guilt.

6. SAME—*when accused may elect to be sentenced under Indeterminate Sentence law.*   One tried for an offense committed before the adoption of the Indeterminate Sentence law of 1895 may elect to be sentenced under its provisions; but it is not error for the court to give him a fixed sentence under the old law if he fails to indicate his election before sentence was pronounced.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

BEACH & BEACH, and C. M. HARDY, for plaintiff in error.

E. C. AKIN, Attorney General, CHARLES S. DENEEN, State's Attorney, HARRY OLSON, and JOEL M. LONGENECKER, for the People.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is a writ of error brought to review the judgment of the criminal court of Cook county adjudging the plaintiff in error to be guilty of the crime of embezzlement and sentencing him to confinement in the penitentiary for the term of three years.

The indictment contained twenty-four counts, but the State's attorney elected to try the plaintiff in error upon but eight of said counts. These counts alleged the owner of the property to be the American Express Company, and some of them alleged the said express company to

be an incorporated company while other of the counts alleged it to be a joint stock association, but each of the counts alleged it to be a corporation organized under the laws of the State of New York. It is urged the evidence did not support the allegations as to the corporate existence of the said express company.

It was proven the American Express Company, at the periods of time when the embezzlement in question occurred, and for many years before, had been transacting the business of an express company in the State of Illinois as a joint stock association and that it maintained its general offices in the city of New York, and had a president, treasurer and secretary at the said home office in said State of New York; that the laws of the State of New York declared all joint stock associations having any of the powers and privileges of corporations should be deemed and taken to be corporations, and provided for the incorporation of joint stock associations. It also appeared said express company engaged in the business, in the State of Illinois and elsewhere, of issuing and selling express money orders, and that the plaintiff in error received from it money orders signed by its proper officers, to be issued and sold by him as an agent of the said company, said orders being valid only when bearing the signature of the plaintiff in error as such agent; that said plaintiff in error executed and delivered to the company receipts for such money orders, one of which is as follows:

*"December 23, 1892.*

*"American Express Co.*—Received, in trust for the American Express Co., two books, containing forty (40) signed money orders, numbered Q410200 to 410239, not exceeding $50 each, for which I (or we) accept the responsibility of due issue and undertake to account therefor.     M. P. KOSSAKOWSKI."

We think the existence of the said express company as a joint stock association under the laws of the State of New York was sufficiently established. In such cases it is only necessary to prove the *de facto* existence of the

corporation, and this may be sufficiently proven without showing that any steps necessary to the creation of a corporation *de jure* had been taken. "If the thing taken is alleged to be the property of a corporation, proof of the *de facto* existence, by reputation or otherwise, is admissible." (Hochheimer on Crimes and Crim. Proc. sec. 716.) In *Smith* v. *State*, 28 Ind. 321, the correctness of the following instruction to the jury was called into question, viz.: "It is not necessary for the State to prove the articles of association or charter of the Chicago and Great Eastern Railway Company, but it is sufficient to prove, by reputation, that there is, or was on May 28, 1867, a company known by that name operating such road, and carrying goods, stock and passengers for hire in its cars running along said company's road." The court ruled the declaration of the instruction that it was sufficient to prove the existence *de facto* of a corporation by reputation was correct as a legal proposition; and in *Reed* v. *State of Ohio*, 15 Ohio St. 217, it was ruled the corporate existence of a bank whose paper is alleged to have been counterfeited may be proved by any one who, of his own knowledge, is acquainted with the fact, or by any one who has seen or handled its notes passing in the community as the notes of such institution, or by general reputation. In *Calkins* v. *State*, 18 Ohio St. 366, the former decision of the Supreme Court of that State in the case of *Reed* v. *State*, *supra*, was referred to approvingly, and the court remarked: "And where a person accepts employment from an association claiming and assuming to have a corporate existence, as its clerk, and then, by means of the facilities which his employment and the confidence reposed in him affords, embezzles its property, it is difficult to perceive any principle of justice, public or private, which would be subserved by requiring of the State stricter proof of the corporate existence of the employer of the clerk, or of the owner of the property embezzled, than was given in this case." Mr. Wharton, in his work

on Criminal Evidence, speaking of the rule that where an individual has acted as a public officer that fact is *prima facie* evidence of his official character without producing his commission, and other like instances of the admissibility of parol evidence to establish *prima facie* the existence of facts of which, if true, there should be written or record evidence, says: "The same rule has been extended to corporations, it being held unnecessary to prove the charter of a corporation acting and recognized generally as such." (Wharton on Crim. Evidence, sec. 164.) In *Fleener* v. *State*, 58 Ark. 98, it was said: "A mere *de facto* corporation, it seems, may be the victim of embezzlement. Evidence of general reputation of corporate existence is regarded as sufficient in such cases. (*Burke* v. *State*, 34 Ohio St. 79; *Calkins* v. *State*, 98 Am. Dec. 121.) And if the same rule is to be applied in criminal as in civil cases, it would seem that one dealing with an ostensible corporation as such, is not permitted to deny its corporate capacity.—*Town of Searcy* v. *Yarnell*, 47 Ark. 269; note to 79 Am. Dec. 437."

It appeared from the testimony the said express company assumed to be a joint stock association and a corporation under the laws of New York, and transacted its business and was known and recognized as such an association. This sufficiently established it had a *de facto* existence as an incorporated joint stock association. The plaintiff in error dealt with it in its *de facto* capacity, and, as its agent, came into possession of the money orders of the company. It would be a reproach to our criminal jurisprudence to permit him to embezzle said orders, or the proceeds of their sale, and escape punishment therefor upon the ground the company had not the full legal corporate authority to transact business in the capacity in which it was acting and in which he represented it as an agent.

It is next urged the court improperly permitted the People to introduce testimony which, as plaintiff in error

contends, had no other tendency than to prove the plaintiff in error disposed of fifteen of said money orders, and appropriated the proceeds of the sale thereof, in the State of New York. It is hardly necessary this assignment of error should be noticed further than to say, all such testimony excluded, the record contains abundant evidence showing plaintiff in error to have been guilty of the embezzlement of numerous other orders, or the proceeds thereof, in the county of Cook and State of Illinois. But embezzlement is committed wherever the wrongful conversion or the failure to account takes place. If the crime charged consists in failure to account, the venue may be laid in the county where the accused was under obligation to account. McClain on Crim. Law, sec. 650.

A joint stock company is an association of individuals possessing a common capital divided into shares, of which each member possesses one or more. These shares represent the interest of the members, and are transferable by the owners without the consent of the other members or the creditors of the association. The laws of the State of New York, under authority of which the association in question assumed the right to act, declared stock associations to be corporations, hence the argument the indictment should have alleged the ownership of the money orders to be in the members of the association is without force.

It is urged there was no proof of a demand the plaintiff in error should account and pay over to the express company, and for that reason the judgment of conviction should be reversed. It appeared agents of the company called upon the plaintiff in error on different occasions during the course of his employment and that he made settlement and paid the amounts due at various times, but that at a later period an agent called again and that plaintiff in error could not be found at his place of business. He was soon after arrested in Toronto, Canada. His disappearance made it impossible to demand settlement

and payment, and it became competent for the People to show conversion otherwise than by demand and failure or refusal to respond. McClain on Crim. Law, 638, 639.

Nor is there any force in the insistence the plaintiff in error could not be legally convicted without proof the express company paid the orders sold by plaintiff in error and not accounted for by him. The facts proven establish the liability of the company to honor the orders, and it was not essential it should be proven such orders had been presented and paid.

The objections to the rulings of the court in the matter of granting instructions in behalf of the People are disposed of by what we have hereinbefore said as to the principles of law applicable to cases of this character. Instructions covering every legal phase of the case for the defense were given at the request of the plaintiff in error, and those asked and refused in that behalf were, so far as proper to be granted, fully covered by the instructions that were given. It is not necessary each particular criminating fact relied upon shall be proven beyond a reasonable doubt, and the court properly refused to advise the jury such degree of proof was essential. It is sufficient if, upon the whole evidence, the jury are satisfied, beyond a reasonable doubt, the defendant is guilty. (*Mullins* v. *People*, 110 Ill. 42.) We find the action of the court in giving, refusing and modifying instructions substantially free from error.

The objection the jurors whose names appear to the verdict are not the same persons who were empaneled as jurors to try the case cannot avail the plaintiff in error. The surnames are the same, but the christian names are in some cases indicated by initials merely. This objection was not made when the verdict was returned. Had it been then preferred, the irregularity, if such it be, could have been obviated. Nothing appears to indicate that the persons empaneled as jurors and those who rendered the verdict were not the same persons.

The verdict of the jury fixed the punishment of the plaintiff in error at three years' imprisonment in the penitentiary, and the court pronounced sentence in accordance with the verdict. The acts of embezzlement occurred between July, 1892, and January, 1893. The indictment was returned at the January term, 1893, of said criminal court. The act providing for the imposition of indeterminate sentences and for a system of parole went into force July 1, 1895. The cause was tried and sentence pronounced at the April term, 1898. It is urged the conviction, being for a fixed period, is in contravention of the act providing for indeterminate sentences in such case, and therefore illegal and void. The act so invoked did not change the character of the punishment provided by the existing law, nor can it be said it inflicted a greater punishment than that provided by the prior law. The effect of the new act may have been to mitigate the punishment. When it is doubtful whether the penalties of a new law are more severe than under the prior law it has been declared the later act is not *ex post facto,* but the defendant shall be allowed to select which of the acts shall be applied to his case. (*Herbert* v. *State,* 7 Tex. 69; *Clarke* v. *State,* 23 Miss. 261; *McInterf* v. *State,* 20 Tex. App. 335.) But we think the question is regulated by statute in this State. When the act providing for indeterminate sentences and a system of parole was adopted, section 4 of chapter 131 of the Revised Statutes, entitled "Statutes," was in force. It is as follows: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued or claim arising before the new law takes effect, save only that the pro-

ceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." This section is not expressly referred to in the indeterminate sentence and parole act, and it is to be presumed that act was adopted in view of the provisions of said section 4. The offense having been committed before the adoption of the parole system, it was proper, by virtue of the provisions of said section 4, to conduct the prosecution and pronounce judgment in accordance with the law in force at the time of the commission of the offense. If the plaintiff in error was of opinion the manner of punishment provided by the parole system was more favorable to him than that provided by the law in force at the time of the commission of the offense, it was his privilege to have the provisions of such law applied by the court in his case, in accordance with the provisions of said section 4. He did not complain of the action of the jury in fixing a definite period of confinement in the penitentiary at the time of the rendition of the verdict, or in the motion for new trial, or when the sentence was pronounced. In the absence of any objection on his part it was competent to pronounce judgment upon the verdict rendered in accordance with the requirements of the law at the time of the commission of the offense. See *Johnson* v. *People*, 173 Ill. 131.

The evidence removed every reasonable doubt of the guilt of the plaintiff in error, and no rule of law or evidence demands interference on our part. The judgment is affirmed.                                    *Judgment affirmed.*