## BOWEN *v.* STATE

[No. 78, October Term, 1954.]

*Decided February 21, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Bernard T. Welsh* and *Arthur J. Hilland,* for appellant.

*James H. Norris, Jr.,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Walter W. Dawson,* State's Attorney for Montgomery County, and *Thomas M. Anderson,* Special Assistant State's Attorney.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a conviction on an indictment charging the appellant, James H. Bowen, on September 8, 1952, and thence continually until April 8, 1953, in Montgomery County, Maryland, in the first count with larceny after trust, (Code, 1951, Article 27, Section 420), and in the second count with embezzlement, (Code, 1951, Article 27, Section 154).

The pertinent parts of the first count follow. "* * * that James H. Bowen, late of said County, on the eighth day of September, in the year of our Lord nineteen hundred and fifty-two, and thence continually until the eighth day of April, in the year of our Lord nineteen hundred and fifty-three, at the County aforesaid, being entrusted with the possession of ten thousand, six hundred, seven dollars, thirty-six cents, current money of the United States, * * * of the goods and chattels, moneys and property of William J. Collins and Catherine V. Collins, for the purpose of applying the said ten thousand six hundred seven dollars, thirty-six cents, current money of the United States, * * * for the use and benefit of the said William J. Collins and Catherine V. Collins, did then and there feloniously and fraudulently convert the same to the use of the said James H. Bowen, * * *."

The pertinent parts of the second count follow. "* * * the said James H. Bowen being then and there agent of

William J. Collins and Catherine V. Collins, and as such agent of William J. Collins and Catherine V. Collins, having received into his possession for, on account of and in the name of the said William J. Collins and Catherine V. Collins, his employer, the sum of ten thousand, six hundred, seven dollars, thirty-six cents, current money of the United States, * * * did then and there feloniously and fraudulently embezzle said sum of ten thousand, six hundred seven dollars, thirty-six cents, current money of the United States, * * * of the money and property of the said William J. Collins and Catherine V. Collins, * * *."

On July 22, 1952, Mrs. Violet C. Helgemo entered into a contract to sell her house and lot in Silver Spring, Maryland, to William J. Collins and Catherine V. Collins, his wife, for the sum of $19,500.00. Mr. Collins paid Mrs. Helgemo a deposit of $1,000.00. The property under contract was subject to a first trust in the amount of $12,500.00 due the Perpetual Building Association of the District of Columbia, (Perpetual). The purchasers agreed to pay "all cash above 1st trust or all cash." Mr. Collins decided to sell the house which he then owned and apply the proceeds to the above purchase, to borrow $7,000.00 from the Home Federal Building and Loan Association and with the cash thereby received to pay off Perpetual.

On September 8, 1952, settlement was held at the office of the Security Title and Investment Corporation, (Security), in Bethesda, Montgomery County, Maryland. The appellant was president of that corporation. He was not present at that time. The settlement was handled by Mrs. Melva G. Story, who was the appellant's secretary and secretary of Security and the only employee of that corporation other than the appellant. Mr. Collins, the purchaser, instructed the Home Federal Building and Loan Association to send $6,983.00, which he had received on the mortgage to that Association, to Security. He also instructed the Lawyers' Title Insurance Corporation to send $10,670.17, which he had re-

ceived from the sale of his house, to Security. He also gave to Security his personal check in the amount of $1,026.50, which paid the purchase price of the house and lot he was buying and the costs of the transaction. From these checks which were sent to Security he instructed Security that the mortgage of $12,500.00, which Mrs. Helgemo had given to Perpetual, was to be paid. Mr. Collins' check in the amount of $1,026.50 to the order of Security was given by Collins to Security's employee, Mrs. Story, in Security's office in Bethesda, Maryland. This check was deposited in the trustee's account of Security in the Security Bank of Washington, D. C. (Security Bank), located in the District of Columbia. The check in the amount of $6,983.00 from the Home Federal Building and Loan Association was mailed by that Association to Security at Bethesda, Maryland, and deposited in Security's trustee's account in the Security Bank in Washington. Settlement for the sale of Mr. Collins' old home was made at the offices of the Lawyers' Title Insurance Corporation, at 923 Fifteenth Street, N. W., in Washington, D. C. Under instructions from Mr. Collins, the check in the amount of $10,670.17 realized from that sale was delivered to Security at Bethesda, Maryland, and deposited by it in its trustee's account in the Security Bank in Washington. Therefore, all the checks were deposited in Washington and paid in Washington. All the withdrawals from the trustee's account were made in Washington.

The testimony shows that Security was incorporated in 1946 with an office in Washington. Later that year it acquired an office in Bethesda. It continued in existence until 1953. The incorporators were Ellis M. Jones, James H. Benner and the appellant. Messrs. Benner and Jones agreed to purchase part of appellant's stock but did not do so. Appellant became owner of all the common and preferred stock except for $5,000.00 worth of preferred stock which was purchased by one Dr. Maxwell. An account was opened in the Security Bank early in 1947. Security conducted a title business from

the time of its incorporation until it was closed out. Sometime during the existence of the corporation Mr. Benner, Mr. Jones and a Mr. John R. Hoeffler, together with the appellant, served as officers. At one time the corporation had a tremendous business.

Mr. Collins, after the settlement, received a bill from an insurance company in the amount of $52.52 which was to have been paid by Security at the time of settlement. He contacted the appellant, who promised that he would attend to this. Mr. Collins testified that he finally had to pay this bill. Early in 1953 a letter came to Mr. Collins' new home, addressed to Mrs. Violet Helgemo, from Perpetual. Upon seeing this letter, Mr. Collins became suspicious and upon investigation it was discovered that Security had never paid off the first trust held by Perpetual. Mr. Collins then, on February 11, 1953, employed an attorney, Mr. Bullard. The appellant, Mr. Bowen, told Mr. Bullard that the reason Perpetual had not been paid, was because a release of a 1939 deed of trust on the property had not been received and, as soon as a substitute trustee was appointed to release this deed of trust, Perpetual would be paid. This substituted trustee was not appointed to release the 1939 deed of trust until February 3, 1953. When asked whether Security had in its escrow account the money with which to pay Perpetual, Mr. Bowen answered in the affirmative.

On February 17, 1953, an attachment case was filed in the District of Columbia. At that time it was discovered that Security had only $1,637.67 in the Security Bank and this amount was in three different accounts. It further developed that appellant and Security had no other money. Appellant then signed a note, personally and as president of Security, for the amount due Perpetual. The $1,637.67 was paid to Mr. Collins' attorney, Mr. Bullard. Part of this money was paid by Mr. Bullard to Perpetual and the balance held for Mr. Collins. Judgment was obtained for the balance owing on the note in the Circuit Court for Montgomery County. Ap-

pellant told Mr. Bullard that in 1947 one of the employees of Security had stolen money from it and had left the State and, although assurances had been given that repayment would be made, this had not been done. Appellant in his testimony said that all the trust funds received by Security were placed in one account and that no one account was entitled to be paid any more than another. Appellant further testified: "But monies paid in on a particular escrow should be applied on a particular escrow; I know that as well as you do. The fact is in this case all escrow funds were deposited in a single bank account, and out of that bank account were paid only legitimate escrow sums. Now, since the Security Title and Investment Corporation trustee account was short by reason of—so there arrived a time, and I confess that in the past two years of my business in the title company I had a divided interest because I was operating another business,—the account was short and I did not know or fully realize the extent of the shortage. When I came to the fall of 1952, at the time Mrs. Helgemo's case was settled, I had no particular shortage in the account, I had forty or fifty thousand dollars; when it came to November and December and January and the account dwindled to nothing, I still had accounts to pay and I stopped operating. I was faced with a very serious situation which I frankly didn't know how to unravel quickly; should I throw up my hands and let somebody lose their house, or should I endeavor to pay it; I paid it." The testimony also showed that sometime after the Collins' money had been placed in Security to clear Collins' title, and before November of 1952, it had been used by Security to pay other accounts. In September of 1953, after the warrant for appellant was issued he borrowed from relatives, put up everything he had, deeded his home, and raised $94,000.00, with part of which he paid Perpetual.

Here the appellant's motion for a directed verdict was overruled at the end of the State's testimony. The appellant then offered testimony in his own behalf. As

contended by the State, he thereby withdrew his request for a directed verdict. No further request for such an instruction was made at the close of appellant's case, which thereby disposed of appellant's motion for a directed verdict. Code, 1951, Article 27, Section 700; Rule 5A of the *Criminal Rules of Practice and Procedure; Auchincloss v. State,* 200 Md. 310, 315, 89 A. 2d 605; *Yanch v. State,* 201 Md. 296, 93 A. 2d 749; *Chisley v. State,* 202 Md. 87, 95 A. 2d 577; *Leet v. State,* 203 Md. 285, 100 A. 2d 789. However, we have before us here a jurisdictional question that involves the subject matter of the case. It is, therefore, reviewable here. *Holland Mfg. Co. v. Thomas,* 136 Md. 77, 110 A. 209; *Montgomery Ward v. Herrman,* 190 Md. 405, 58 A. 2d 677; *Berlinsky v. Eisenberg, et al.,* 190 Md. 636, 638, 639, 640, 59 A. 2d 327; *Robb v. State,* 190 Md. 641, 60 A. 2d 211; *Maryland Cooperative Milk Producers, et al. v. Bell, et al.,* No. 64, *This Term,* 206 Md. 168, 110 A. 2d 661.

Of course, an offense against the laws of the State of Maryland is punishable only when committed within its territory. A person cannot be convicted here for crimes committed in another state. *Worthington v. State,* 58 Md. 403, 409. The essential element in the crime of larceny after trust is the conversion. Code, 1951, Article 27, Section 420, *supra; Hochheimer on Criminal Law,* (2d Ed.), Section 365, page 402.

The State in its brief says: "It is the general rule that the proper venue for embezzlement is the county where the act of appropriation or conversion took place." However, it further contends that there was a fair inference that, if a conversion took place with fraudulent intent, such intent was conceived in Montgomery County and that where the intent to embezzle is formed determines the jurisdiction in a prosecution for embezzlement. It relies on *People v. Baker,* 64 Cal. App. 336, 221 P. 654, and *People v. Brock,* 21 Cal. App. 2d 601, 70 P. 2d 210. Assuming, without deciding and we do not here so decide, that the proper jurisdiction in a prose-

cution for embezzlement is that in which the intent to embezzle is formed, there is not sufficient evidence here that there was any intent on the part of either Security or appellant to embezzle the money when the checks were received at Security's Bethesda office in Montgomery County, Maryland. The evidence here shows without contradiction that when the checks were received there were ample funds of Security in the Security Bank in Washington to pay off the trust in the amount of $12,500.00. The comptroller of the Security Bank testified that the check in the amount of $6,983.00 was deposited in that bank on September 9, 1952, and the check in the amount of $10,670.17 was deposited there on September 15, 1952. The balance of Security in the Security Bank on September 15, 1952, was $43,681.28. There were, therefore, ample funds in that bank, when the money was supposed to be paid to Perpetual and when the intent is alleged to have existed, to pay the sum which the appellant is accused of embezzling. It is true that in November of 1952 and thereafter there was not sufficient money to pay Perpetual. Although it appears that other funds in the custody of Security had been used to pay accounts which were not properly payable from those funds, there is no evidence here to show an intent on the part of anyone, when the checks were sent to Security at Bethesda and deposited in Washington, to pay persons other than Perpetual to whom the funds were due. In *Heughan v. State*, 82 Ga. App. 640, 61 S. E. 2d 685, relied on by the State, the defendant was convicted of larceny after trust of an automobile entrusted to him in the State of Georgia. It was found in his possession in Louisiana. The court there quoted the following from a former Georgia case: " 'The venue in a case such as now before us may be laid in the county where the property was entrusted, although the physical conversion of it was in another county, where the facts of the case authorized the jury to find that the intent to convert the money was formed in the county where the property was entrusted'." It

was there further said: "Intent may be manifested by the circumstances connected with the perpetration of the offense." In the instant case there is no evidence to show any intent to convert the money at the time the checks were received in Bethesda.

The State also claims that in cases of indictment for embezzlement jurisdiction is properly laid in the county where the accused was under an obligation to account. Among cases relied on are the following: *Kossakowski v. People*, 177 Ill. 563, 53 N. E. 115; *People v. Davis*, 269 Ill. 256, 110 N. E. 9; *Hopkins v. State*, 52 Fla. 39, 42 So. 52; *Cole v. State*, (Ala.), 67 So. 2d 64. Assuming, without deciding, and we do not so decide, that this is a true rule, the person to whom appellant or Security were supposed to account was Perpetual. The office of this corporation is located at Eleventh and E Streets, N. W., Washington, D. C. Therefore, the accounting was to be made in the District of Columbia and not in Maryland.

The State further claims that prosecution for embezzlement is properly instituted in the jurisdiction where the money was received, even though the money was later deposited in a bank located in another jurisdiction. It relies on the case of *Denmark v. State*, (Ga.), 161 S. E. 286. In that case the appellant, Denmark, was secretary, director and a stockholder of Brittain Brothers Company which operated one store in Floyd County, Georgia, and another in Chattooga County, Georgia. Denmark went to the store in Chattooga County, which was under his control, and procured a draft for $1,000.00. He later got $1,200.00 in currency from the Chattooga County store. The case does not show whether the draft was cashed in Chattooga County. "Denmark carried the money to Rome [apparently in another county] and deposited it to his personal credit in the National City Bank of Rome." The Court of Appeals of Georgia there held that the criminal intent to convert money is presumed to have been formed in the county wherein the corporated officer obtained possession thereof. We have

hereinbefore found in the instant case that there was not sufficient evidence to show any intent to convert the money at the time the checks were received in Bethesda, Maryland.

Under "Embezzlement" in *Wharton's Criminal Law*, Vol. 2, Section 1309, it is said: "Some Act of Conversion Must Be In The Jurisdiction. Some act of conversion or appropriation by the bailee or carrier must be alleged and proved to have taken place within the jurisdiction of the court." *Larkin v. People*, (1871), 61 Barb. N. Y. 226. In *Hylton v. Commonwealth*, (Ky.), 91 S. W. 696, Kerr entered into a written contract in Virginia with appellant by which he agreed to furnish to appellant money to buy white oak trees in Kentucky, and under the contract he furnished appellant with $10,245.00. Practically all of this money was paid in checks sent to appellant in Virginia or given to him in Pennsylvania. All of the money received by appellant was placed to his credit in a bank in Virginia and drawn out by checks on that bank. The Court of Appeals of Kentucky there held: "The offense was committed at the time when and place where appellant converted this money to his own use; and, in the absence of any evidence showing a conversion in Pike County, Ky., it is fair to presume that the conversion took place in the state of Virginia when and at the times appellant drew from the bank the money deposited there to his credit, with the purpose of not investing it in timber in Pike County, but of appropriating it to his own use; and as the crime charged is proven to have been committed in the state of Virginia, the courts of that state alone have jurisdiction of prosecutions against the perpetrator of the offense. The courts of this state cannot take cognizance of crime committed against the laws of a neighboring state. The crime of conversion under this statute is a single offense complete in itself, when the fraudulent conversion takes place." For cases holding generally to the same effect see *State v. Owen*, 119 Oregon 15, 244 P. 516; *State v. Moore*, 189 Wash. 680, 66 P. 2d 836; *Hatfield v. Guay*,

87 F. 2d 358; *Henderson v. State,* (Ala.), 29 So. 799; *State v. Nahoum,* 172 La. 83, 133 So. 370; *State v. Bacon,* (Mo.), 70 S. W. 473; *State v. Mispagel,* (Mo.), 106 S. W. 513; *State v. Blackley,* (N. C.), 50 S. E. 310.

In the instant case the checks were deposited in the District of Columbia, were paid in the District of Columbia, and the money was withdrawn in the District of Columbia. We are, therefore, of opinion that the Circuit Court for Montgomery County had no jurisdiction in this case. The judgment will, therefore, be reversed without a new trial. With this finding it is unnecessary that we pass upon other questions presented.

> *Judgment reversed without a new trial.*
> *Costs to be paid by the County Commissioners of Montgomery County.*