GEORGE KLOOSTERHOUSE AND LOUISE D. KLOOSTERHOUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kloosterhouse v. Commissioner
Docket No. 261-77.
United States Tax Court
T.C. Memo 1981-481; 1981 Tax Ct. Memo LEXIS 259; 42 T.C.M. (CCH) 970; T.C.M. (RIA) 81481; September 2, 1981. *259 Petitioner provided money to a corporation that was in need of financial help. In return for part of the funds, petitioner received 50 percent of the stock of the corporation. Despite the infusion of funds, the company went out of business. Held, petitioner is not entitled to a deduction under sec. 165, I.R.C. 1954, because he has not proved that his losses were due to theft as defined under the relevant state law. Charles A. Kubinski, for the petitioners. Lawrence D. Garr, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By statutory notice dated October 8, 1976, respondent determined a deficiency of $ 6,393 in petitioners' Federal income tax for the taxable year ended December 31, 1973. After concessions, the sole issue remaining for our decision is whether petitioners are entitled to a theft loss deduction, pursuant to section 165, I.R.C. 1954, in the amount of $ 16,100 resulting from Mr. Kloosterhouse's payments to Clemco, Inc. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners George Kloosterhouse *260 and Louise D. Kloosterhouse, husband and wife, resided in Tantallon, Maryland at the time of the filing of their petition herein. They filed a timely Federal income tax return for the calendar year 1973 with the Office of Internal Revenue at Philadelphia, Pennsylvania. Louise D. Kloosterhouse is a party herein solely by reason of her filing a joint return with George Kloosterhouse (hereinafter petitioner). During the taxable year in issue, petitioner was engaged in the business of renting trailers. Clemco, Inc. (hereinafter Clemco), a corporation created by Clemmie Gossett, was involved in the business of trash management. In 1972 Clemco found itself in need of funds to repair trucks that had been damaged by a hurricane. The corporation turned to petitioner for the needed capital. In July and September of 1972 petitioner paid a total of $ 2,500 to Clemco. In return for $ 1,500 of the $ 2,500, petitioner received one-half of the stock of the corporation. [1] *261 In addition, petitioner was given the title of president of the corporation. In early 1973 Gossett entered into negotiations with representatives of Recycle Trash Co. to purchase the assets of that company. During the course of the negotiations, Gossett consulted with petitioner concerning the proposed acquisition. Although the deal was never implemented in its original form, Clemco did acquire the use of some of the trucks and the trash routes of Recycle Trash Co. In April and May 1973 Kloosterhouse loaned an additional $ 13,600 to Clemco. As in 1972, the checks were made payable to Clemco. These funds were used to pay debts and operating expenses of the corporation. While Kloosterhouse did not have an active role in the mnagment of the business, he often would stop at the yard when he was in the area. In July 1973 petitioner became aware that Clemco was having financial problems. Petitioner requested a status report from Gossett on the financial situation of the corporation. Gossett disclosed only sketchy details about Clemco's position. On August 1, 1973 petitioner resigned aws president of Clemco. Clemco ceased doing business in September 1973. At the time of its demise, Clemco's assets consisted of trash *262 routes, goodwill and informal agreements under which it used various garbage trucks. None of the assets was distributed in liquidation to petitioner. OPINION The controversy in this case centers on whether the petitioner is entitled to a theft loss deduction under section 165 for the sum of $ 16,100 that he paid to Clemco, Inc. during 1972 and 1973. Petitioner argues that he is entitled to a deduction under section 165 in 1973 [2] *263 because his loss resulted from the theft of his money by Gossett. Respondent on the other hand concedes that petitioner suffered a loss but disputes the contention that petitioner's loss was the result of a theft. Rather, respondent argues that petitioner purchased 50 percent of Clemco's outstanding stock for $ 1,500 and loaned Clemco and additional $ 14,600 for business operating needs. When Clemco ceased operation, petitioner was left with a $ 1,500 long-term capital loss from worthless stock [3] and a $ 14,600 short-term capital loss from worthless nonbusiness debts, [4] *264 both of which were reportable on his 1973 return. It is well established that petitioner has the burden to prove that he is entitled to the claimed deduction. Welch v. Helvering, 290 U.S. 111 (1933). It is equally well settled that substance and not mere form will govern in determining deductible losses. Vietzke v. Commissioner, 37 T.C. 504, 511 (1961); sec. 1.165-1(b), Income Tax Regs.
Section 165(c)(3) allows an individual taxpayer to deduct nonbusiness losses in excess of $ 100 if such losses arise from, among other things, theft. As used in the Code, the term "theft" includes larceny, embezzlement and robbery. Sec. 1.165-8(d), Income Tax Regs. The term is one "of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker, particularly including theft by swindling, false pretenses, and any other form of guile." Edwards v. Bromberg, 232 F.2d 107, 110 (5th Cir. 1956). As such, deductions for theft losses have been sustained in cases in *265 which false representations were made to the taxpayer which induced him to part with his money or property. Gerstell v. Commissioner, 46 T.C. 161 (1966); Nichols v. Commissioner, 43 T.C. 842 (1965); Monteleone v. Commissioner, 34 T.C. 688 (1960). The determination of whether a theft has taken place is made according to the law of the jurisdiction where the loss was sustained. Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. per curiam 523 F.2d 1053 (5th Cir. 1975); Monteleone v. Commissioner, supra at 692. While a criminal conviction in a state court may establish conclusively that a theft has occurred, the deduction does not turn on whether the thef has been convicted, prosecuted or even whether the taxpayer has chosen to move against his malefactor. Vietzke Commissioner, supra at 510; Monteleone v. Commissioner, supra at 694. Rather, the taxpayer merely must prove by a preponderance of the evidence that, under the relevant state statute, a theft occurred. Jones v. Commissioner, 24 T.C. 525, 527 (1955); Allen v. Commissioner, 16 T.C. 163, 166 (1951). The parties appear to agree that whether the activities here in question constituted a theft must be determined under the applicable *266 sections of Maryland law. Petitioner claims that Gossett committed either the crime of obtaining property under false pretenses or the crime of larceny after trust. The relevant section of the Maryland Code pertaining to false pretenses provides, in pertinent part, as follows: § 140. Obtaining money, etc., under false pretenses with intent to defraud. Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor, and being convicted thereof shall be liable, at the discretion of the court, to be punished by fine and imprisonment, or by confinement in the penitentiary for not less than two years nor more than ten years, as the court shall award * * *. [Md. Crim. Law Code Ann. sec. 140.] In order to find that money was taken by false pretenses, petitioner must show that Gossett (1) by making a false representation of a past or existing fact, (2) with intent to defraud, and (3) with knowledge of its falsity, (4) obtained property from petitioner, (5) who relied on the false representation, (6) to his detriment. Polisher v. State, 11 Md. App. 555, 276 A.2d 102, 104 (1971). *267 Cases have held that the intent to cheat or defraud is the essential element of the crime of false pretenses. Andresen v. State, 24 Md. App. 128, 331 A.2d 78, 95 (1975); Bosley v. State, 14 Md. App. 99, 286 A.2d 203, 207 (1972). After careful consideration of all of the evidence presented, we cannot find that petitioner has proved that the money was obtained from him by false petenses under Maryland law. The evidence indicates that Gossett was engaged in a trash business that was in need of financial help. In 1972 petitioner provided $ 1,500 in exchange for which he received 50 percent of the stock of the corporation. In addition, he loaned the corporation additional funds during the following months to meet operating expenses and truck repair bills. From the evidence before us, we cannot find that Gossett made any fraudulent misrepresentations of the financial condition of the corporation or the uses to which the money would be put, or that Gossett intended to cheat or defraud petitioner. Furthermore, petitioner has not provided sufficient evidence to support his allegation that Gossett took Clemco's assets to start a new trash business with other partners. [5] Rather, it appears *268 that petitioner decided to invest in a small, unprofitable business that he hoped would turn around with the infusion of his funds. Unfortunately for him, it never did. He has proved to us only that he made a bad investment decision resulting in a loss, but he has not proved that his money was taken from him by false pretenses. Petitioner alternatively claims that money was taken from him in a larceny after trust. The Maryland Code defines this crime as follows: § 353. Larceny after trust. Any person who shall be entrusted with the possession of goods or things of value for the purpose of applying the same for the use and benefit of the owner or person who delivered the goods and things who shall fraudulently convert the same to his own use, shall, where the value of the thing so converted is one hundred dollars or more, be deemed guilty of a felony * * *. [7] *269 [Md. Crim. Law Code Ann. sec. 353.] In order for us to find that a larceny after trust has been committed, petitioner must show that Gossett willfully and deliberately converted money entrusted to him and that there was a purposeful refusal, accompanied by fraudulent intent, to return such money to petitioner. Roderick v. State, 9 Md. App. 120, 262 A.2d 783, 785 (1972); Bowen v. State, 206 Md. 368, 111 A.2d 844, 847 (1955). As we stated above, however, petitioner has not proved that Gossett willfully converted the money or that Gossett had the requisite specific fraudulent intent. The evidence presented merely shows that the petitioner invested $ 1,500 in Clemco and loaned the corporation an additional $ 14,600 during 1972 and 1973, and that, despite these advances, the company went out of business. We therefore cannot find that petitioner's money was taken by larceny after trust, as defined under Maryland law. Having found that petitioner's losses did not amount to a theft under Maryland law, we hold that petitioner is not entitled *270 to a deduction under section 165 for his losses. However, relying on respondent's concession to treat the losses as having arisen from worthless stock and worthless nonbusiness debts, petitioner may treat his losses as having arisen under sections 165(g) and 166. Concessions having been made, Decision will be entered under Rule 155. Footnotes
1. The stipulation of facts erroneously states that $ 2,500 was paid for the stock. The parties have agreed that only $ 1,500 was paid for the stock, and the remaining $ 1,000 was a loan.
2. Sec. 165(a) allows a deduction for losses "sustained during the taxable year and not compensated for by insurance or otherwise." Sec. 165(e)explains that a theft loss "shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." Petitioner contends, and respondent does not contest, that the loss was discovered in 1973 and therefore the entire loss should be recognized in that year. 3. Under sec. 165(g) the loss resulting from the worthlessness of any security, which is a capital asset during the taxable year, is treated as the loss from the sale or exchange of a capital asset on the last day of such year. See also sec. 166(e)↩. Because petitioner acquired the stock interest in Clemco during July 1972, and the worthlessness is deemed to occur on Dec. 31, 1973, respondent claims that the loss thereon should be treated as a long-term capital loss. 4. Sec. 166(a)(1) allows a deduction for debt that became wholly worthless during the taxable year. However, sec. 166(d) limits the deduction available to noncorporate taxpayers for worthless nonbusiness debt. See sec. 166(d)(2). Such worthless nonbusiness debt is to be treated as a loss from the sale or exchange of a capital asset held for less than 1 year. In this case, petitioner neither has contended that the advances amounted to worthless business debts nor do we think the facts would support such a contention. Therefore, we need consider only whether petitioner has suffered a theft loss or a loss from worthless securities and worthless nonbusiness debts.
5. Moreover, even if we were t find that Gossett absconded with Clemco's assets to start a new trash business under a new name, the theft would have been from the corporation and not from petitioner.↩
7. Art. 27, sec. 353, Md. Crim. Law Code Ann., was repealed by Acts 1978, ch. 849, sec. 4, effective July 1, 1979. Nevertheless, the application of sec. 353 to persons who committed violations of the statute as it existed prior to July 1, 1979 was not precluded by its repeal.