487 A.2d 306

**James Franklin McDONALD**

v.

**STATE of Maryland.**

**No. 256, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 6, 1985.

462

464

Lawrence E. Freedman, Fairfax, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County and Jack Hanley, Asst. State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before BISHOP, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

James Franklin McDonald, the appellant, was convicted by a jury in the Circuit Court for Montgomery County (Mitchell, J.) of attempted second-degree murder, assault with intent to murder, assault with intent to maim, and battery. The convictions were merged for purposes of sentencing into assault with intent to murder. The trial judge sentenced the appellant to thirty years imprisonment and ordered him to make restitution in the sum of $45,483. In challenging that judgment the appellant contends:

 I. The trial court lacked jurisdiction to try the offense;

 II. The trial court erred in admitting evidence seized in the search of the appellant's car and bedroom;

 III. The state failed to disclose material and exculpatory evidence;

 IV. The trial court erred in admitting photographs of the victim into evidence and in allowing the victim to testify;

 V. The trial court improperly instructed the jury; and

 VI. The prosecutor committed reversible error in closing argument.

At about 9:00 p.m. on February 22, 1983, the appellant and Sandra Magee arrived at the Flaming Pit Restaurant in Gaithersburg, Maryland. Shortly after 9:00 p.m., Ms. Magee called her daughter, Glenna Magee, and told her that she and the appellant were on their way home. They left the restaurant at about 9:30 p.m. in the appellant's car,

leaving Ms. Magee's car in the restaurant parking lot. Each had consumed a portion of one drink at the restaurant. At approximately 2:00 a.m. the following morning, the appellant and Ms. Magee arrived at the Germantown, Maryland home they shared with Ms. Magee's daughters, Glenna and Kimberly, ages 18 and 11 respectively at the time of the occurrence. Glenna witnessed the appellant carrying Ms. Magee into the house. After she noticed that her mother appeared injured, Glenna ran to her boyfriend's house a mile away to call the police.

When the police arrived, they were admitted by the appellant. He told the police that Ms. Magee was too drunk to come to the door and then allowed them to come in to check on her condition.

The police saw that Ms. Magee appeared to be seriously hurt. When they inquired about her injuries, the appellant responded that after leaving the Flaming Pit Restaurant at approximately 1:30 a.m., Ms. Magee's heel on her shoe broke causing her to fall in the restaurant parking lot. The appellant added that when she attempted to regain her balance, Ms. Magee fell several more times.

Believing that Ms. Magee required medical attention, the police had members of the fire department's paramedic squad come into the house to treat her. Shortly thereafter, Ms. Magee was taken by ambulance to the hospital. The appellant was then placed under arrest.

At approximately 6:30 p.m. on the day of the appellant's arrest the police returned to the house and were admitted by Ms. Magee's daughter, Glenna. The police searched the bedroom shared by the appellant and Ms. Magee and seized several items including bed linen, towels and a wrist watch. After leaving the house the police conducted a visual examination of the exterior of the appellant's car which was parked in front of the house. The police looked through the windows into the car's interior and noticed a number of items of possible evidentiary value. The vehicle was then towed to the Germantown police station and impounded.

Thereafter the car was photographed and thoroughly searched pursuant to a search warrant.

At trial, evidence was adduced concerning the nature and severity of Ms. Magee's injuries. Expert medical witnesses testified that Ms. Magee's injuries could not have been sustained in a fall and were caused by multiple severe blows with a blunt instrument. Further testimony indicated that she suffered significant brain damage and memory loss. Ms. Magee herself testified, but due to the extent of her injuries was unable to remember anything about the night of the incident. Swabbings from the appellant's fingernails, as well as blood stains from the appellant's car, the clothing of the appellant and Ms. Magee, and hair samples found in the appellant's car were sent to the FBI for analysis. Blood which matched that of Ms. Magee was found in the appellant's car and on the shirt and blue jeans worn by the appellant. The fingernail swabbings were inconclusive. It was determined that of the hair samples taken from the appellant's car a number had been forcibly removed from the heads of the appellant and Ms. Magee. Forcibly removed human hair which did not match the hair of either the appellant or Ms. Magee was also found in the car.

## I.

■ The appellant charges that the Circuit Court for Montgomery County lacked jurisdiction to hear this matter because the State failed to prove that the crime occurred within the territorial boundaries of Maryland. Questions of jurisdiction, as distinguished from venue,[1] can always be

---

1. This Court has recently discussed the distinction between the terms jurisdiction and venue. In *State v. Jones,* 51 Md.App. 321, 323–24, 443 A.2d 967 (1982), we stated:

 Criminal jurisdiction has been defined "as the power and authority constitutionally conferred on a court, judge or magistrate to take cognizance of an offense...." 21 C.J.S. Courts, § 19. The courts of one state cannot take cognizance of a crime committed against the

raised for the first time upon appeal. Md. Rule 1085; *Tate v. State*, 236 Md. 312, 203 A.2d 882 (1964); *Bowen v. State*, 206 Md. 368, 111 A.2d 844 (1955); *Heath v. State*, 198 Md. 455, 85 A.2d 43 (1951).

It is fundamental that jurisdiction resides solely in the courts of the state where the crime is committed. *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), *Urciolo v. State*, 272 Md. 607, 325 A.2d 878 (1974), *Bowen v. State, supra;* 1 Wharton's Criminal Law § 14 (Torcia 14th ed. 1978); R. Leflar, American Conflicts Law § 111 (3d ed. 1977); 21 Am.Jur.2d, Criminal Law, § 343. It is equally well settled, however, that the situs of the commission of a crime may be established by circumstantial evidence. *Breeding v. State*, 220 Md. 193, 151 A.2d 743 (1959). In the instant case, the evidence supports an inference that Ms. Magee's beating by the appellant took place in Montgomery County, Maryland. There was evidence adduced at trial to show that the appellant and Ms. Magee were seen leaving the Flaming Pit Restaurant in Gaithersburg, Maryland at approximately 9:30 p.m. Further, Glenna Magee testified that she observed the appellant carry Ms. Magee into their Germantown, Maryland

---

laws of a neighboring state. *Bowen v. State*, 206 Md. 368, 378, 111 A.2d 844 (1955).

Venue, on the other hand, is the place of the trial, the "county in which a court of appropriate jurisdiction may properly hear and determine the case...." *Stewart v. State*, 21 Md.App. 346, 348, 319 A.2d 621 (1974).

Venue presupposes proper jurisdiction, 1 Wharton's Criminal Procedure § 36 at 103 (12th ed. 1974), for without it, a court's judgment is void. *Brown v. State*, 219 Ind. 251, 37 N.E.2d 73 (1941). However, both jurisdiction and venue are founded in locality—the place where the crime occurred. Id. at 78. See *United States v. Cores*, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958). This common factor has led to the use of the term "territorial jurisdiction." *Urciolo v. State*, 272 Md. 607, 325 A.2d 878 (1974). Some confusion has resulted in other states from using the terms, venue and jurisdiction, interchangeably. See *McBurney v. State*, 280 Md. 21, 31, n. 7, 371 A.2d 129 (1977).

Whatever the state of confusion elsewhere, this State respects the distinction. In sum, jurisdiction is the power to hear and determine a case; venue signifies the place of trial. *Guarnera v. State*, 23 Md.App. 525, 328 A.2d 327 (1974).

home at 2:00 a.m. the following morning. The appellant, on the other hand, cannot point to even a scintilla of evidence which would indicate that the crime was committed outside of Maryland. Rather he speculates that the location of the Flaming Pit Restaurant is such that in the period of time during which the whereabouts of the appellant and Ms. Magee could not be shown, they could have traveled into several other states as well as the District of Columbia.

■ It is incumbent upon the appellant to do more than make a bare allegation that the crime might have occurred outside of Maryland in order to sufficiently generate the issue of lack of jurisdiction. *Carroll v. State,* 19 Md.App. 179, 310 A.2d 161 (1973), *Adair v. U.S.,* 391 A.2d 288 (D.C.App.1978); *State v. McDowney,* 49 N.J. 471, 231 A.2d 359 (1967). In *Carroll,* we concluded that where an agreed statement of facts offered at trial demonstrated jurisdiction to be in Maryland, "jurisdiction may not now be defeated in this Court by the bald, self-serving averment of the appellant that *he has now determined that the offense was committed dehors this State."* *Id.* 19 Md.App. at 182, 310 A.2d 161 (emphasis in original).

■ Based upon the evidence presented at trial we find the appellant's suggestion that the trial court was without territorial jurisdiction to try his case unconvincing.

## II.

■ The appellant next challenges the admission of evidence at trial which was obtained pursuant to a search of the appellant's car and Ms. Magee's bedroom. The appellant's attack upon the seizure and ultimate search of his car is without merit. After his arrest, the officers visually inspected the exterior of the appellant's car. This visual inspection did not offend the appellant's Fourth Amendment privacy interest. *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Following that inspection the officers determined that it would be necessary to impound the car. Inasmuch as there was probable cause to arrest

the appellant and probable cause to believe that his car contained evidence of the crime, the police officers' decision to impound the automobile was valid. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The police then obtained a proper search warrant before searching the interior of the vehicle. We see no illegality in either the seizure or the search of the appellant's car. Therefore, the fruits of that search were properly admissible at trial.

The appellant further asserts that certain other evidence should have been suppressed at trial as it was seized pursuant to an illegal search of the bedroom shared by the appellant and the victim. The appellant's challenge to the admissibility of this evidence is based upon his claim that Ms. Magee's daughter, Glenna, did not have authority to give consent to the bedroom search. We find this second evidentiary challenge equally meritless.

Premises may be searched without a warrant when voluntary consent to search the premises is given. *U.S. v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The prosecution is not limited to proof that the consent was given by the defendant. The search will be deemed valid if voluntary consent is obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. Common authority rests on a mutual use of the premises by persons having joint access or control for most purposes. *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. The appellate courts of Maryland have on numerous occasions recognized that voluntary third party consent of one possessing common authority over or sufficient relationship to the premises will justify a warrantless entry into a dwelling. *Nestor v. State*, 243 Md. 438, 221 A.2d 364 (1966); *McCray v. State*, 236 Md. 9, 202 A.2d 320 (1964); *Jones v. State*, 13 Md.App. 309, 283 A.2d 184 (1971), *cert. denied*, 264 Md. 749 (1972).

In this case, it is clear that Ms. Magee's 18 year old daughter, who shared the house with her mother and the

appellant, gave voluntary consent to the admission of the police into the home. It is improbable that Glenna Magee was coerced or intimidated by the police. On the contrary, it was Glenna's earlier call to the police that led to the appellant's arrest, indicating her willingness to cooperate with them.

Further, we find that Glenna had sufficient authority to give a proper consent to the search of her mother's bedroom. When the police arrived at the home, Glenna told them that her mother owned the house and that she, Glenna, lived there. Particularly in view of the mother's incapacity, the adult daughter's status as a resident of the house and as a close relative of the owner gave her the authority to consent to a search of her mother's bedroom. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Collins v. State*, 39 Md.App. 165, 384 A.2d 120, *cert. denied*, 283 Md. 732, 734 (1978); *see also In re Anthony, F.*, 293 Md. 146, 442 A.2d 975 (1982), where the Court of Appeals held that a teenage girl could give valid consent to a police entry for the purpose of securing the arrest of her brother.

Additionally, there was no evidence to indicate that the daughter was routinely dissallowed entry into her mother's bedroom. Although the appellant testified that Glenna had to obtain permission before entering the bedroom, the record is silent as to whether the door was kept locked, or that Glenna was instructed to knock before entry.

We note, also, that if Ms. Magee herself had been able to do so, she would almost certainly have given permission for the search of her bedroom. We conclude that Ms. Magee's daughter had the authority to consent to the entry of the bedroom, and her consent was given voluntarily.

### III.

The appellant next asserts that the State failed to disclose material, exculpatory evidence. It is clear that the prosecution's suppression of evidence material to the de-

fendant's guilt is a violation of due process. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Giles*, 239 Md. 458, 212 A.2d 101 (1965), *vacated on other grounds*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). In this case, however, a review of the facts and circumstances lead us to conclude that there was no such denial of due process necessitating a new trial.

 The evidence which the appellant claims to have been denied him was contained within the notes of the FBI analyst with regard to hairs belonging to someone other than the appellant or the victim which had been removed from the appellant's car. The state points out that the notes were unclear and that the appellant had, at trial, all significant exculpatory evidence in the FBI report; indeed, the FBI witness was cross-examined at trial on the presence of these unidentified hairs. Moreover, the appellant knew of these notes during trial and did not ask for them at that time. Nor did the counsel for the appellant request a continuance to allow him time to obtain further discovery on this matter. Under these circumstances, denial of a new trial was a proper exercise of the trial court's discretion. *Jones v. State*, 16 Md.App. 472, 477, 298 A.2d 483, *cert. denied*, 268 Md. 750 (1973).

### IV.

 The appellant charges that the trial court erred in admitting photographs of the victim into evidence and in allowing the victim to testify. It is well settled that the admission of photographs is within the trial court's discretion. In *Fuller v. State*, 45 Md.App. 414, 420, 413 A.2d 277, *cert. denied*, 288 Md. 735 (1980), this Court upheld the admission of photographs showing the victim's wounds for the purpose of proving a brutal assault. Here, the trial court was well within the bounds of proper discretion in admitting the selected photographs.

██ Likewise, the trial court did not commit reversible error in allowing the victim to testify. Although the admission of certain types of real evidence has often been objected to on grounds of undue prejudice, and in some cases this effect may be produced, "it is to be doubted whether the necessity of thus demonstrating the method and results of the crime should give way to this possibility of undue prejudice...." 4 Wigmore, *Evidence* § 1157 (Chadbourn rev. 1972).

In the case of *Nizer v. Phelps*, 252 Md. 185, 249 A.2d 112 (1969), the Court of Appeals held that the trial judge did not abuse his discretion in permitting the jury in a personal injury case to "view" the victim who at the time of trial was incapable of testifying and was residing in a nursing home. Earlier, in the case of *Dyson v. State*, 238 Md. 398, 209 A.2d 609 (1965), the Court held that the trial court properly admitted into evidence a photograph of a rape victim, "as relevant to several pertinent facets of the case." *Id.* at 408, 209 A.2d 609 (citation omitted). Here, Ms. Magee's inability to recall the events of the night in question served to demonstrate the nature and extent of her injuries. We conclude that there was no abuse of discretion by the court in permitting her to testify.

## V.

██ The appellant challenges the jury instructions in several respects. First, the appellant asserts that the trial court committed reversible error by refusing to instruct the jury on manslaughter. Review of the record, however, indicates that counsel for the appellant failed to make a proper and timely exception to the jury instructions. Accordingly, the appellant has failed to preserve this issue for appellate review. Md. Rule 757 [new Rule 4–325(e) ]; Md. Rule 1085; *Robeson v. State*, 39 Md.App. 365, 386 A.2d 795 (1978), *aff'd*, 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

Further, the court did not err in its instruction on circumstantial evidence. The trial judge gave the following instruction with regard to circumstantial evidence:

Now we speak of evidence, and I instruct you that there are two types of evidence from which you may find the truth as to the facts of any given case: direct evidence and circumstantial evidence.

Direct evidence is the testimony of one who asserts actual knowledge of a fact such as the testimony of an eyewitness as to what he or she saw. Circumstantial evidence is proof of a change of facts and circumstances from which the existence or the non-existence of a fact in issue may be logically inferred.

Both types of evidence are equally entitled to your consideration. The law makes no distinction between the weight to be given to direct evidence or circumstantial evidence; nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.

You should weigh all of the evidence in the case, and find the facts in accordance with all the evidence; both direct evidence and circumstantial evidence.

Counsel for the appellant excepted to this instruction, arguing that the instruction was deficient because the court did not quote a portion of the pattern instruction set forth in Aaronson, *Maryland Criminal Jury Instructions and Commentary*, § 1.05 at 10–11 (Michie 1975). That instruction states:

Where this occurs, the circumstances, taken together, must be inconsistent with, or such as to exclude every reasonable hypothesis or theory of innocence, but proof of guilt to a mathematical certainty is not essential.

This Court in *Smith v. State*, 51 Md.App. 408, 443 A.2d 985, *cert. denied*, 293 Md. 618 (1982) observed:

[A] conviction based on circumstantial evidence requires no greater degree of certainty than one based on direct evidence. In either instance, the trier of fact must be convinced of defendant's guilt beyond a reasonable

doubt. The State need not disprove every theory or hypothesis of innocence.

*Id.* at 425, 443 A.2d 985 (citations omitted). *See also Metz v. State,* 9 Md.App. 15, 262 A.2d 331 (1970); *Nichols v. State,* 5 Md.App. 340, 247 A.2d 722 (1968).

■■■■ We find that the trial judge's instruction as to circumstantial evidence, read together with his instruction regarding the State's burden of proof,[2] fully instructed the jury that it must be convinced beyond a reasonable doubt of the appellant's guilt.

■■■■ The appellant also claims that the court improperly instructed the jury as to the appellant's constitutional right to remain silent and not to testify in his defense. Once again, the appellant seeks to have us review the propriety of the trial court's instruction when he failed to except properly to that instruction below. Md. Rule 757. We refuse to entertain such a challenge.

## VI.

■■■■ Finally, the appellant claims that the State made an impermissible comment in its closing argument concerning the appellant's failure to testify. The comment in

---

**2.** The trial court charged the jury of the State's burden of proof with the following:

[T]he law casts the burden of proof upon the State of Maryland to prove beyond a reasonable doubt every fact material to the guilt of the defendant. Proof beyond a reasonable doubt means such proof as produces an abiding conviction to a moral certainty of the truth of the charge. Unless you the jury are thus convinced, you must acquit the defendant. This does not, however, mean that the State is required to prove its case beyond all doubts. The State is not required to prove its case to an absolute or mathematical certainty, because there are few things in this life that are susceptible as such proof.

Proof beyond a reasonable doubt is simply such proof as convinces you of the truth of the fact to the extent that you would be willing to act upon that conviction without hesitation in an important matter in your own private business affairs.

question, the exchange between counsel which followed, and the trial judge's curative instruction were as follows:

[By Mr. Hanley, the Prosecutor]

In this case, he knows exactly what the motive is. He knows. Nobody else knows.

[By Mr. Davis, Defense Counsel]

I object, Your Honor, and move for a mistrial ... Most respectfully, I do move for a mistrial. I want the record to reflect that not only did Mr. Hanley say that he knows, but he with the front of his body towards the jury but with his hand pointed towards the Defendant, indicated that the "he" was the Defendant, and I do object, and I move for a mistrial.

MR. HANLEY: I would ask you to instruct the jury. I should not have made the comment.

THE COURT: All right. I shall. Ladies and gentlemen, I instruct you to disregard the last few statements that were made by the State's Attorney.

As I told you before, and I cannot enforce strongly enough, the accused is not required to offer any evidence in a criminal proceeding. He has an absolute right to remain silent. .As he sits here now, he is clothed with innocence until you reach a verdict.

Certainly, a prosecutor is not permitted to comment on the defendant's failure to take the stand in his own behalf in light of the Fifth Amendment guarantee against self-incrimination. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Dill v. State,* 10 Md.App. 362, 270 A.2d 489 (1970). In the case *sub judice,* however, the court's immediate curative instruction to the jury to disregard the comment corrected any error. Therefore, it was not an abuse of discretion by the court to refuse to declare a mistrial. *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974); *Comi v. State,* 26 Md.App. 511, 338 A.2d 918 (1975).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.