295 N.J. Super. 459 (1996)
685 A.2d 488
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN T. BRAGG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 1996.
Decided December 2, 1996.
*461 Before Judges MUIR, Jr., KLEINER and COBURN.
Susan L. Reisner, Public Defender, attorney for appellant (William Welaj, Designated Counsel, on the brief).
Peter Verniero, Attorney General, attorney for respondent (Debra A. Owens, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by COBURN, J.S.C. (temporarily assigned).
*462 The first two counts of the indictment charged defendant with offenses allegedly occurring on June 27 and 28, 1993. Count one charged kidnapping, N.J.S.A. 2C:13-1b, and count two charged second degree aggravated assault, N.J.S.A. 2C:12-1b(1). The theory of the assault was that defendant was attempting to cause the victim serious bodily injury.
The events relating to these charges occurred over many hours, to some extent in New Jersey, but primarily in the Commonwealth of Pennsylvania. The jury acquitted defendant of kidnapping but found him guilty of third degree criminal restraint, N.J.S.A. 2C:13-2a, as a lesser included offense, and of second degree aggravated assault. These convictions must be reversed because the trial court failed to charge the jury correctly with respect to its fact-finding responsibilities on the jurisdictional issues.
The remainder of the indictment related to July 6, 1996. The jury found defendant guilty of both offenses as charged, third degree terroristic threats, N.J.S.A. 2C:12-3b (count three) and second degree witness tampering, N.J.S.A. 2C:28-5a (count four). In essence, defendant threatened violence if the victim testified against him. These convictions, as well as those under the first two counts of the indictment, must be reversed because of the trial court's erroneous charge on other-crime evidence.

I
On June 27, 1993, at about 11:30 p.m., the victim, DeYonka Fletcher, had just returned to the area of her home in Trenton, New Jersey, from a dance recital when the defendant John T. Bragg, a resident of Morrisville, Pennsylvania, drove up in his automobile. Fletcher and Bragg had begun dating around March, 1993. Their testimony with respect to what occurred thereafter differed sharply.
According to Fletcher, on numerous prior occasions, which she described in graphic detail, the defendant had committed acts of *463 physical violence against her, including restraining her in a hotel room. She further testified that during one of the confrontations defendant had punched and attacked her mother. As a result, she had decided to terminate the relationship. The defendant denied the prior violent acts and asserted that on June 27, 1993, he had come to see Fletcher to maintain their relationship.
Fletcher testified that the defendant forced her into his automobile and locked the windows and doors so that she could not get out. Initially he drove briefly around Trenton, during which time he cursed at her and struck her a number of times with his right fist. The defendant claimed she came with him willingly and that he did not strike her in New Jersey.
Defendant drove the victim to his apartment in Morrisville, Pennsylvania. According to her, he forced her upstairs, placed a sofa up against the apartment door, and terrorized her throughout most of the night. She said he punched her and kicked her repeatedly, choked her, and threatened to kill her. The defendant said they initially engaged in sexual relations, that she was always free to leave, and that, at most, he may have slapped her four or five times.
In the morning, they drove back to New Jersey, then to Philadelphia or New York, finally returning to Trenton in the afternoon. She claimed that he hit her a number of times during this part of their trip. At one point he purchased cocaine which he then sold in Bordentown, New Jersey. Defendant let the victim off on the Trenton side of the Morrisville bridge. She ran into her uncle, who sent her home. Thereafter she was taken to the police department where she filed a complaint but refused medical treatment for her swollen face.
On July 6, 1993, defendant entered Fletcher's home. He found her alone on a couch and, according to the victim, threatened to have her and her children killed if she pursued the criminal charges against him. Defendant admitted speaking to her on that date in her home, but he denied making any threats. According to the victim, on two subsequent occasions defendant again threatened *464 harm to her and to her family if she did not withdraw the criminal charges. The defendant denied those threats as well.

II
Defendant contends the trial court lacked jurisdiction of any offenses which might have occurred in the Commonwealth of Pennsylvania. Consequently, he asserts the court erred in failing to instruct the jury that in determining guilt it could only consider defendant's actions in New Jersey. Although defendant did not submit a charge on this point, before testifying he asked the court whether he could be convicted based on what he was alleged to have done in Pennsylvania. The court responded: "What happened in Morrisville as well because it is all part of a continuing course of conduct, and the state line does not make any difference." That view to the extent it is based on the broad concept of "continuing course of conduct" is inconsistent with the law of this State.
In State v. McDowney, 49 N.J. 471, 474, 231 A.2d 359 (1967) (citations omitted), the Court noted the common law rule "that an essential element necessary to the invocation of jurisdiction in criminal cases is that the crime be committed in the state in which the case is tried." However, with the introduction in 1978 of the New Jersey Code of Criminal Justice, the law of jurisdiction was substantially modified. N.J.S.A. 2C:1-3. That section is lengthy and covers many aspects of jurisdiction which are not pertinent to this case. We are concerned with the following language in section 3a:
[A] person may be convicted under the law of this State of an offense committed by his own conduct . .. if:
* * * * * * * *
(2) Conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit a crime within the State;
* * * * * * * *

*465 (4) Conduct occurring within the State establishes... an attempt ... to commit an offense in another jurisdiction which also is an offense under the law of this State.
Since this statute relates jurisdiction to the concept of attempt, our next point of reference must be N.J.S.A. 2C:5-1, which defines "attempt" expansively, providing in pertinent part:
a. Definition of attempt. A person is guilty of an attempt to commit a crime, if, acting with the kind of culpability otherwise required for commission of the crime, he:
(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
b. Conduct which may be held substantial step under subsection a.(3). Conduct shall not be held to constitute a substantial step under subsection a.(3) of this section unless it is strongly corroborative of the actor's criminal purpose.
Thus, to hold defendant criminally responsible in New Jersey for what occurred in Pennsylvania there had to be proof beyond a reasonable doubt (N.J.S.A. 2C:1-13) that either his action in Pennsylvania was an attempt to commit a particular crime in New Jersey (N.J.S.A. 2C:1-3a(2)) or his conduct in New Jersey was an attempt to commit in Pennsylvania a particular act which was a criminal offense under the laws of both this State and that of the Commonwealth of Pennsylvania (N.J.S.A. 2C:1-3a(4)).
Where the jurisdictional facts were not in doubt, our courts have had no problem finding as a matter of law under N.J.S.A. 2C:1-3 that we had jurisdiction for crimes carried out in another state. See, e.g., State v. Streater, 233 N.J. Super. 537, 559 A.2d 473 (App.Div.), certif. denied, 117 N.J. 667, 569 A.2d 1358 (1989)(conspiracy in New Jersey to commit a crime in Connecticut gave New Jersey jurisdiction to try the substantive offense); and State v. Sanders, 230 N.J. Super. 233, 553 A.2d 354 (App.Div. 1989) (conduct in New Jersey which constituted an attempt to endanger the welfare of a child in Pennsylvania provided jurisdiction in our courts to try the defendant for abandonment of the child in the Commonwealth).
*466 When there is a factual dispute, as here, with respect to the jurisdictional facts, the jury plays a critical role. In State v. Schumann, 111 N.J. 470, 545 A.2d 168 (1988), the Court had this to say:
We believe a more correct statement would have been that the court should determine as a matter of law whether it has jurisdiction over a specific area, and that the trier of fact then determines whether the crime occurred within that area. Thus, the trier of fact determines the disputed facts concerning the "attendant circumstances," N.J.S.A. 2C:1-14h(2), of a defendant's conduct relating to jurisdictional issues.
[Id. at 474-75, 545 A.2d 168 (citation omitted).]
The victim claimed she was brought to Pennsylvania forcibly while the defendant testified that she came of her own free will; and the victim and defendant told conflicting stories with regard to whether the former was free to leave the latter's apartment in Morrisville. Depending on whether the jury credited the victim's testimony or that of defendant, under appropriate instructions from the court it could have found the kidnapping or criminal restraint occurred, if at all, either in New Jersey or in Pennsylvania, or, indeed, at different times in both jurisdictions. The jury could have decided either way on the question whether the conduct in New Jersey was an attempt to kidnap or criminally restrain the victim in Pennsylvania.
The jury could have found that defendant attempted to cause the victim serious bodily in New Jersey either because she claimed she was first struck in this State or because his conduct in New Jersey constituted an attempt in its broadest sense as defined by N.J.S.A. 2C:5-1. On the other hand, the jury could also have found that there was no conduct constituting an attempt to cause serious bodily injury until after they were in defendant's apartment. In such circumstances, State v. Schumann, supra, clearly requires submission of the matter to the jury with appropriate instructions.
The trial court's failure to properly charge on the jurisdictional issues must be recognized on appeal as plain error. R. *467 2:10-2; R. 3:10-2(e); State v. Streater, supra; State v. Schumann, supra.

III
We turn next to the trial court's handling of the other-crime evidence admitted, without objection, pursuant to N.J.R.E. 404(b). As part of its general charge at the conclusion of the case, the entirety of the court's instructions to the jury on other-crime evidence consisted of the following remarks:

With respect to the charge of kidnapping against Mr. Bragg, testimony has been introduced that the defendant, Mr. Bragg, on several occasions in the months before June 27, 1993, struck and/or threatened DeYonka Fletcher with physical injury. That evidence may be used for one purpose only, to determine or measure the defendant's intent, motive or plan, if any, at the time of the alleged kidnapping on June 27, 1993. The defendant, Mr. Bragg, is not charged here with any crimes during the months preceding June 27, 1993. Therefore, you may not consider his prior wrongful conduct of striking DeYonka Fletcher, if any, as an indication that he committed the crime of kidnapping on June 27, 1993. You may not conclude that because he may have struck or threatened DeYonka Fletcher in the past, that he is therefore guilty of the crime of kidnapping. Again, evidence of conduct that occurred before June 27, 1993 may be used only to determine whether the defendant possessed a certain intent, motive or plan at the time of the alleged kidnapping.

Likewise, evidence or testimony that the defendant bought or sold drugs on June 28, 1993, if you find it to be credible, may not be used by you to infer that he is therefore guilty of the crimes charged. If you find that the defendant did in fact buy or sell drugs on June 28, 1993, you may use that evidence only for the purpose of assessing the credibility of the witnesses and their renditions of the events of June 28, 1993. [emphasis added.]
The governing principles of law are summarized in State v. G.S., 145 N.J. 460, 678 A.2d 1092 (1996):
As we stated in [State v.] Cofield, [127 N.J. 328, 605 A.2d 230] supra, "`more is required to sustain a ruling admitting such evidence than the incantation of the illustrative exceptions contained in the Rule.'" 127 N.J. at 337, 605 A.2d 230 (quoting Stevens, supra, 115 N.J. at 305, 558 A.2d 833). On admission of other-crime evidence, the court must not only caution against a consideration of that evidence for improper purposes, it must through specific instruction direct and focus the jury's attention on the permissible purposes for which the evidence is to be considered. In this case, the trial court, in all three sets of instructions, failed to indicate the specific purposes for which the other-crime evidence could be considered.
[Id. at 472, 678 A.2d 1092.]
*468 Clearly, the trial court's charge failed to comply with principle of specification of the purposes for which the other-crime evidence was introduced, as required by G.S. and the cases cited therein. Also, one of the examples, "proof of plan" should not have been included at all since there was no suggestion that the defendant's earlier acts of violence were part of an integrated or continuing plan. State v. Stevens, 115 N.J. 289, 305-06, 558 A.2d 833 (1989).
The most important additional respect in which this charge was inadequate was the court's failure to limit the other-crime evidence at all with respect to the crimes of which defendant was convicted in this trial. The State attempts to suggest the charge benefitted the defendant by limiting the use of the other-crime evidence to the kidnapping. However, we reject the suggestion. In short, while the charge advised, albeit in inadequate terms, of the use to which such evidence could be put in deciding whether a kidnapping occurred, it in no way expressly restricted the jury from using the evidence of past violence for improper purposes when deciding the other counts of the indictment. Lastly, no part of the charge refers at all to how the jury should treat the evidence, which was wrongly admitted, about defendant's vicious physical attack upon the victim's mother.
Since the defendant did not object below, we must consider whether plain error occurred. R. 2:10-2. Plain error is reversible if it is "clearly capable of producing an unjust result." R. 1:7-2; R. 2:10-2. The question becomes whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
State v. G.S., supra, instructs that a "fact-specific inquiry... must be made to determine whether prejudice has resulted from the failure to give a sufficiently limiting instruction governing the use of other-crime evidence." 145 N.J. at 473, 678 A.2d 1092. In G.S. the Court found that there was no prejudice, but there the evidence of guilt was strong and there were "strong *469 repeated admonitions not to use the other-crime evidence to establish a criminal predisposition." Id. at 476, 678 A.2d 1092. By contrast, here the evidence of guilt come mostly from the victim herself; and defendant firmly denied any criminal act, admitting at most to simple assault. There were no corroborative eye-witnesses regarding any of the charges and the victim's injuries were visible but barely evidenced an intent to cause serious bodily injury, the gravamen of the assault charge. The charge lacked a strong admonition not to use the other-crime evidence for improper purposes. (For an appropriate charge on this point, see, State v. G.S., supra, 145 N.J. at 471-73, 678 A.2d 1092.) The other-crime evidence of prior assaults posed a substantial risk that the jury would find defendant was criminally disposed, particularly since it learned of the defendant's assault upon the victim's mother and was never told that evidence was irrelevant.
Not only was this inadequate other-crime charge given only once, at the end of the case, an approach inconsistent with G.S., 145 N.J. at 473, 678 A.2d 1092, it was also far more prejudicial than the G.S. charge for the reasons stated above. Since we have a reasonable doubt as to whether the errors led the jury to a result it might not otherwise have reached, ibid, we are constrained to reverse.

IV
The defendant contends in Point III of his brief that the trial court erred in failing to charge sua sponte false imprisonment, N.J.S.A. 2C:13-3, as a lesser included offense of kidnapping. In light of our disposition of Points I and II, we need not consider whether the trial court's failure to give this unrequested charge was plain error. R. 2:-10-2. However, it is clear that if requested on retrial the charge must be given.
The disorderly persons offense of false imprisonment requires proof that the defendant knowingly restrained the victim unlawfully so as to interfere substantially with her liberty. To raise that *470 offense to third degree criminal restraint, N.J.S.A. 2C:13-2a, which the trial court did give to the jury as a lesser included offense of kidnapping, there must be proof that the defendant committed the restraint "in circumstances exposing the other to risk of serious bodily injury." N.J.S.A. 2C:13-3. Here the defendant was not even charged with causing serious bodily injury and the evidence that causing such injury was his intent was not particularly strong considering the many hours spent together during which one might assume that if he had that intent he could have achieved the desired result with ease. Thus, there clearly appears to be a sound basis in the evidence for charging this lesser included offense.

V
The balance of defendant's brief, a criticism of the prosecutor's summation (Point IV), a request for a new trial on the conviction for second degree aggravated assault (Point V), and an attack upon the severity of the sentence imposed (Point VI), raises issues which are mooted by our disposition of the arguments contained in his first two points.
Reversed and remanded for further proceedings on the charge of criminal restraint under count one of the indictment and on the charges of aggravated assault, terroristic threats, and witness tampering under counts two, three, and four of the indictment.