724 A.2d 657

**STATE of Maryland**

v.

**Terrence Zachary BUTLER.**

**No. 65, Sept. Term, 1998.**

Court of Appeals of Maryland.

Feb. 19, 1999.

Celia Anderson Davis, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

Terrence Zachary Butler, respondent, was tried and convicted by a jury in the Circuit Court for Prince George's County on charges related to the deaths of three individuals: his former girlfriend, Marvis Willis; Ms. Willis's brother, Raynard Willis; and Ms. Willis's son, Donnell Willis. The jury found respondent guilty of the following: Count one: second degree murder of Marvis Willis; count two: use of a handgun in the commission of a felony in the murder of Marvis Willis; count three: second degree murder of Donnell Willis; count four: first degree murder of Raynard Willis; and count five: use of a handgun in the commission of a felony in the murder of Raynard Willis. The court sentenced respondent to life without parole for count four and additional consecutive sentences of thirty years each for counts one and three and twenty years each for counts two and five.

Respondent appealed to the Court of Special Appeals, which reversed his convictions in an unreported opinion and remanded the case to the circuit court. The State petitioned this Court for writ of certiorari on April 17, 1998, and respondent filed a cross-petition on April 22, 1998. We granted both petitions to address an important issue raised in this matter. As rephrased by the State in its brief before this Court, petitioner presents question one for our review and respondent presents question two:

    1. Did the Court of Special Appeals err in holding that the issue of territorial jurisdiction presented a question of fact for the jury to resolve?

2. Did the trial court properly admit evidence of Butler's prior conviction for armed robbery during the prosecutor's cross-examination?

We shall affirm the judgment of the Court of Special Appeals as to the first question. Because respondent's convictions are reversed and remanded, we need not address the second question.

## I. Facts

We shall set forth the relevant facts in this case as described by the Court of Special Appeals in its opinion below:

Appellant was charged and convicted of the murders of Marvis Willis, his former girlfriend, her brother Raynard, and her three-year-old son Donnell. The bodies were discovered in Raynard's leased car in northwest Washington, D.C., when the D.C. Fire Department was called to investigate a vehicle fire. All three bodies were wrapped in bedding that had been secured with cellophane tape. The bodies of Donnell and Raynard were found in the passenger compartment of the car, while Marvis's body was discovered in the trunk. Police investigators determined that the fire had been set deliberately with flammable liquid and an open flame.

Autopsies performed on the three bodies revealed that Marvis and Raynard had been shot to death; Donnell was asphyxiated. Marvis's body was burned after death and the other two bodies suffered heat damage from the vehicle fire. A .38 caliber revolver with an unusual "top break" barrel was found with the bodies. At trial, the State presented testimony by a firearms expert who stated that the bullets extracted from the bodies were consistent with, but not conclusive as, having been fired from that weapon. Marvis and Raynard's mother testified that the items of bedding in which the bodies were wrapped were articles that she had given to Marvis on previous occasions.

The State produced testimony by a neighbor, Terry Lee Flowers, who stated that he had seen appellant leave Marvis's apartment in a burgundy rental car on the evening of

December 2, 1991. When he saw the car on a later news broadcast and recognized it as the one appellant was driving, he attempted unsuccessfully to call a crime report hotline. Flowers also testified that he had seen appellant with the top-break handgun found with the bodies and remembered talking to appellant about the unusual gun in November 1991.

The State also produced testimony by the homicide investigator who canvassed the neighborhood where the burned car was found on the night of the fire. The investigator reported having seen a man wearing a tam and a fur coat in a doorway just two doors down from the location of the vehicle fire. He later chose appellant's likeness from an array of photographs and also identified appellant from the witness stand. Several prosecution witnesses testified that appellant and Marvis had been having relationship difficulties related to appellant's involvement with other women. Appellant himself testified that they had agreed to end their relationship and to live separately because appellant was not ready for marriage.

Appellant testified in his own defense, denying that he committed the murders, that he was present on P Street on the night of the vehicle fire, that he drove Raynard's car on that evening, or that he ever showed Flowers a top-break handgun.

## II. Discussion and Analysis

In the case before us, the question is if a dispute exists as to whether the crime for which the defendant is accused occurred within Maryland, is such a determination an issue of law for the court to decide or is it a factual determination to be made by the trier of fact? This Court has never addressed this issue squarely.

The State argues to this Court, as it did to the Court of Special Appeals, that when a criminal defendant challenges a court's territorial jurisdiction, that issue should be raised prior to trial and determined by the trial judge. The State proffers

several reasons for this conclusion. First, the State claims a challenge to a court's territorial jurisdiction strikes at the very "foundation of the court's authority," and therefore should be determined by the court as a matter of law. Second, the State argues, territorial jurisdiction is a threshold issue that should be challenged prior to trial. In that vein, the State analogizes territorial jurisdiction to the determination of venue, which is normally decided by the court upon a mandatory pretrial motion to dismiss pursuant to Maryland Rule 4–252. Finally, the State argues that even if this Court were to determine that a challenge to the trial court's territorial jurisdiction need not be made prior to trial, the issue is one of law to be decided by the trial court and not a factual determination to be made by the trier of fact.

Respondent, on the other hand, argues that when facts relating to the location of the crime are in dispute, the matter should be resolved by the trier of fact. Second, contrary to the State, respondent argues venue and territorial jurisdiction are not analogous and should not be treated similarly. Respondent also contends that the majority of states and the federal circuits submit the issue of territorial jurisdiction to the trier of fact. Finally, respondent argues that when the issue of territorial jurisdiction is submitted to the trier of fact, the State must prove beyond a reasonable doubt that criminal conduct occurred in Maryland.

The Court of Special Appeals, relying on *Burral v. State,* 118 Md.App. 288, 702 A.2d 781 (1997), *cert. granted,* 349 Md. 105, 707 A.2d 90 (1998), held that the "question of territorial jurisdiction was a question of fact for the jury and that the State had the burden of proving beyond a reasonable doubt that the crimes were committed in Maryland." Therefore, the intermediate appellate court held, the trial court erred in failing to instruct the jury to resolve the issue of territorial jurisdiction.

Territorial jurisdiction describes the concept that only when an offense is committed within the boundaries of the court's jurisdictional geographic territory, which generally

is within the boundaries of the respective states, may the case be tried in that state. The roots of the territorial jurisdiction requirement lie in the Sixth Amendment: "[T]he Sixth Amendment to the Constitution of the United States, made applicable to state judicial proceedings by the Fourteenth Amendment, requires that 'in all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury of the State ... wherein the crime shall have been committed....'" *Trindle v. State*, 326 Md. 25, 38, 602 A.2d 1232, 1238 (1992) (Eldridge, J., dissenting in part and concurring in part) (quoting U.S. CONST. amend. VI). We said in *Bowen v. State*, 206 Md. 368, 375, 111 A.2d 844, 847 (1955), that "an offense against the laws of the State of Maryland is punishable only when committed within its territory. A person cannot be convicted here for crimes committed in another state." *See also Martel v. State*, 221 Md. 294, 299, 157 A.2d 437, 440, *cert. denied*, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732 (1960). Commentators are in accord with this description. *See, e.g.*, Annotation, *Comment Note—Necessity of Proving Venue or Territorial Jurisdiction of Criminal Offense Beyond Reasonable Doubt*, 67 A.L.R.3d 988, § 10, at 1004 (1975) ("The judicial power to hear and determine a criminal prosecution, as between the forum and other states, federal districts, or countries, on the basis of the offense having occurred within the territorial limits of the forum state or federal district, is what is referred to by the term 'territorial jurisdiction.'"). Venue, then, pertains to the county in which a case can be tried; territorial jurisdiction concerns whether the offense was committed within the boundaries of the State.

We are bound as to the issue of territorial jurisdiction by the restraints of common law. This Court has noted that "under the common law ... a state may punish only those crimes committed within its territorial limits." *Pennington v. State*, 308 Md. 727, 730, 521 A.2d 1216, 1217 (1987). *Cf. Trindle*, 326 Md. at 31, 602 A.2d at 1235 ("[A]t common law a crime is committed in the state where the criminal act (or omission) occurs if the crime is defined only in terms of that

act (or omission) but a crime will also be considered as committed in the state where its intended result occurs if the definition of the crime includes such a result.").

Even though a trial court's power is limited geographically by the principles of territorial jurisdiction, under certain circumstances, the defendant's presence is not required in a court's territorial jurisdiction if, for instance, the intended result or an essential element of his or her crime lies in Maryland. *See id.; Urciolo v. State,* 272 Md. 607, 631, 325 A.2d 878, 892 (1974) ("Although presence within the territorial jurisdiction of the state is necessary to subject a person to its penal laws, actual presence is not necessary to make a person amenable to the laws of a state for a crime committed there; the presence may be constructive rather than actual.").

Although this Court has never addressed the exact issue presented here,[1] other jurisdictions have. One commentator has explained that "[a]t least when the matter has been put into issue by the defendant, whether the prosecuting government actually has criminal jurisdiction over the conduct of the defendant is a matter to be determined by the trier of fact." WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.7(b), at 163 (1986) (footnote omitted). The Arizona Supreme Court held likewise in *State v. Willoughby,* 181 Ariz. 530, 538, 892 P.2d 1319, 1325 (Ariz.1995), *cert. denied,* 516 U.S. 1054, 116 S.Ct. 725, 133 L.Ed.2d 677 (1996). In that case, the defendant, Daniel Willoughby, his wife Trish, and their children resided in Phoenix, Arizona. On a family trip to Mexico, the defendant and the children returned to their vacation condominium from a day trip to find Trish stabbed, strangled, and bludgeoned. She died later that evening.

---

1. The Court of Special Appeals, in *State v. Jones,* 51 Md.App. 321, 340, 443 A.2d 967, 978 (1982), *vacated on other grounds,* 298 Md. 634, 471 A.2d 1055 (1984), stated in dicta that "territorial jurisdiction represents a factual question for the jury to resolve with appropriate instructions and the State has the burden of proof beyond a reasonable doubt."

The defendant was charged with murder and conspiracy by the Arizona courts. His lover, a Mexican resident alien living in Arizona, was charged with and pled guilty to the murder to Mexican authorities. At the close of his trial in Arizona, the defendant requested the judge to instruct the jury that it must find beyond a reasonable doubt that the crimes for which he was charged were committed within the territorial jurisdiction of Arizona. The judge refused and resolved the jurisdictional facts as a matter of law under a preponderance of the evidence standard. The Arizona Supreme Court held that the trial court erred. The court first stated: "If jurisdictional facts are intertwined with the merits of the case, the jurisdictional and substantive issues are difficult to resolve separately *only if the jurisdictional facts are controverted by evidence." Id.* at 536, 892 P.2d at 1325. The court went on to note that if the facts upon which the territorial jurisdiction of the court depends are disputed, most states have held that the jury should resolve those disputes. *Id.* at 536–37, 892 P.2d at 1325–26. The Arizona Supreme Court adopted this rule, holding that "[i]n the very rare case in which jurisdiction is legitimately in issue because of contradicting jurisdictional facts, Arizona's territorial jurisdiction must be established beyond a reasonable doubt by the jury." *Id.* at 538, 892 P.2d at 1327.

The majority of other state and federal courts, as the *Willoughby* court noted, are in accord with the rule that, generally speaking, when facts regarding a court's territorial jurisdiction are in dispute, the resolution of those facts should be left for the trier of fact, not the court. *See, e.g., People v. Witt,* 53 Cal.App.3d 154, 167, 125 Cal.Rptr. 653, 661 ("[T]he question of territorial jurisdiction is a question of fact to be determined by the trier of fact."), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1518, 47 L.Ed.2d 768 (1976); *Lane v. State,* 388 So.2d 1022, 1028 (Fla.1980) ("[T]his territorial jurisdiction issue is a factual determination which is within the province of the jury to resolve...."); *People v. Holt,* 91 Ill.2d 480, 492, 64 Ill.Dec. 550, 440 N.E.2d 102, 108 (1982) (stating that territorial jurisdiction must be proved to the trier of fact beyond a reasonable doubt); *State v. Liggins,* 524 N.W.2d 181, 184 (Iowa 1994)

(holding that when territorial jurisdictional facts are disputed, the issue should be determined by the jury); *State v. Collin,* 687 A.2d 962, 964 (Me.1997) (holding that pursuant to Maine's territorial jurisdiction statute and cases from other states addressing the issue, territorial jurisdiction is an issue of fact to be decided by a jury when controverted, but determined by the court when no facts are in dispute); *State v. Baldwin,* 305 A.2d 555, 559 (Me.1973) ("[T]he State has the burden of proving beyond a reasonable doubt that the criminal conduct it seeks to vindicate occurred in the State of Maine."); *State v. Bragg,* 295 N.J.Super. 459, 466, 685 A.2d 488, 491 (1996) (explaining that with respect to jurisdictional facts and under that state's territorial jurisdiction statute, " 'the court should determine as a matter of law whether it has jurisdiction over a specific area, and that the trier of fact then determines whether the crime occurred within that area,' " (quoting *State v. Schumann,* 111 N.J. 470, 545 A.2d 168 (1988))); *People v. McLaughlin,* 80 N.Y.2d 466, 472, 591 N.Y.S.2d 966, 606 N.E.2d 1357, 1359–60 (1992) (holding that territorial jurisdiction must be proved by the State to the trier of fact beyond a reasonable doubt and citing to twenty-two jurisdictions that hold likewise); *State v. Batdorf,* 293 N.C. 486, 494, 238 S.E.2d 497, 502–03 (1977) ("[W]hen jurisdiction is challenged, as here, the State must carry the burden and show beyond a reasonable doubt that North Carolina has jurisdiction to try the accused."); *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255, 258 (1973) ("[I]n those infrequent cases where jurisdiction depends upon the resolution of disputed facts, it is within the province of the jury to resolve the issue under proper instructions . . . ."); *see also Bryant v. Taylor,* 797 F.Supp. 456, 461 (D.Md.1992) (explaining that the factual dispute of whether a criminal offense was committed on land within the territorial jurisdiction of the United States is a jury question); *United States v. Greer,* 956 F.Supp. 531, 536 (D.Vt.1997) (recognizing that under certain statutory offenses, the issue of territorial jurisdiction may be a factual determination for the jury).[2]

---

**2.** Two jurisdictions have held expressly that the territorial jurisdiction determination is for the court, not the jury. *See State v. Beverly,* 224

Iowa has held expressly that not only is territorial jurisdiction a factual issue to be determined by the jury when disputed, it is an essential element of the crime that the State must prove beyond a reasonable doubt. *See Liggins*, 524 N.W.2d at 184. That court's holding relied in part on Iowa's rather expansive criminal territorial jurisdiction statute, which essentially provided that territorial jurisdiction is an element to be proven by the state.[3]

The Indiana Court of Appeals in *McKinney v. State*, 553 N.E.2d 860, 863 (Ind.Ct.App.1990), went not quite as far and held that in some cases, the existence of a fact to be proven is treated like an element of the crime. In *McKinney*, there was testimony that the defendant, Scott McKinney, murdered his victim in Ohio. There also was testimony indicating that he committed the murder in Indiana, where the body was found. The Indiana Court of Appeals stated:

> The presumption that a homicide victim found in the state was murdered in the state leads to the conclusion that the state has territorial jurisdiction to prosecute the perpetrator. Territorial jurisdiction is not necessarily thought of as an element of a crime. Nevertheless, the Model Penal Code makes explicit the conclusion that territorial jurisdiction is a fact that must be established. Model Penal Code § 1.13(9)(c). Indiana statutes do not define jurisdiction as an element of the offense; *however, where the law has established the necessity of a certain fact for an accused to be guilty of an offense, the existence of that fact is treated much like an element of the offense. See McGowan v. State* (1977), 267 Ind. 16, 366 N.E.2d 1164; *Sumpter v. State* (1974), 261 Ind. 471, 306 N.E.2d 95; *Young v. State* (1972), 258 Ind. 246, 280 N.E.2d 595. In this case then territorial

---

Conn. 372, 379, 618 A.2d 1335, 1339 (1993); *Mitchell v. United States,* 569 A.2d 177, 180 (D.C.), *cert. denied,* 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990); *Adair v. United States,* 391 A.2d 288, 290 (D.C. 1978)

**3.** As we have noted, the General Assembly has not broadened Maryland's territorial jurisdiction.

jurisdiction is an element of the offense that must be proved by the state.

*Id.* (emphasis added). Thus, the court held that because it was necessary for the state to prove that the murder was committed in Indiana in order to convict the defendant in an Indiana court, territorial jurisdiction was an element of the crime of murder under the circumstances of that case. *Id.*

As we have explained, it is well-settled in Maryland that a court must have territorial jurisdiction over a criminal defendant to exercise its jurisdiction, or power, over that defendant. Similarly, our courts consistently have recognized that in order to satisfy the territorial jurisdiction requirement, the crime, or essential elements of it, must have occurred within the geographic territory of Maryland. For example, this Court explained in *Urciolo*, 272 Md. at 631–32, 325 A.2d at 892:

Where one absent from a state commits a crime therein through an innocent agent the absentee is liable in the state in which the crime was committed to indictment, trial and conviction. 21 Am.Jur.2d § 387 (1965).... In other words, acts performed outside a state, by intending to produce and producing detrimental effects within the state justify that state in prosecuting and convicting the person who causes the harm as if he had been present at the commission of the crime. 21 Am.Jur.2d *Criminal Law* § 386 (1965); Annot., 42 A.L.R. 272 (1926). Typically, if a person, while in one state sets in motion a force which operates in another state, the actual presence of the offender in the other state is not necessary to make him amenable to its laws for the crime committed there, if an offense is the immediate result of his action. 21 Am.Jur.2d *Criminal Law* § 386 (1965). This principle has been applied where one delivers counterfeit money or a forged instrument to a child of tender years or to an innocent adult, with instructions to pass and utter the same and the act is done. *See* Clark and Marshall, Crimes § 4.00 at 207 (7th ed.1967). *See Adams v. People, supra* [1 N.Y. 173 (1848)], where one who in Ohio addressed a letter to a person in New York and obtained money by false

pretenses upon presentation in New York of the letter by an innocent agent was held guilty as a principal in New York. *See also Commonwealth v. White,* 123 Mass. 430, 25 Am. Rep. 116 (1877) (larceny) and *Commonwealth v. Thomas,* 410 Pa. 160, 189 A.2d 255, *cert. denied,* 375 U.S. 856 [84 S.Ct. 118, 11 L.Ed.2d 83] (1963) (conspiracy). [Some citations omitted.]

*See also Jones,* 51 Md.App. at 339, 443 A.2d at 978 ("In our view of Maryland law, it is not essential to criminal responsibility that the accused perform every act necessary to accomplish the crime within the geographical confines of Maryland."). Difficulties occur, as in the case *sub judice,* when the body of a murdered victim is found within the territorial limits of one state,[4] but other evidence tends to show that the actual murder or essential elements thereof might have taken place in another state, thereby generally giving the latter state power to hear the matter under the concept of territorial jurisdiction.

We hold that when evidence exists that the crime may have been committed outside Maryland's territorial jurisdiction and a defendant disputes the territorial jurisdiction of the Maryland courts to try him or her, the issue of where the crime was committed is fact-dependent and thus for the trier of fact. A bald, conclusory assertion that the offense was not committed within Maryland's territorial jurisdiction, however, is not, by itself, sufficient to create a dispute as to territorial jurisdiction—there must be some supportive evidence. When evidence raises a genuine dispute, territorial jurisdiction becomes an issue the State must prove to the trier of fact.[5] We

---

**4.** This Court has recognized that "the finding of a dead body in a particular county [and, by deduction, the state in which that county lies,] raises a presumption, or supports an inference, that the killing took place there." *Breeding v. State,* 220 Md. 193, 200, 151 A.2d 743, 747 (1959). The inference, of course, may be rebutted.

**5.** We do not hold, as have other jurisdictions, that territorial jurisdiction is an element of the offense to be proven in every case. Most of the jurisdictions that so hold have done so based on statutes expanding

note that the issue put forth to the trier of fact is not, what are the territorial boundaries of the jurisdiction of the court; that is, in the context of criminal law, generally an issue for the court. The issue to be determined by the fact finder is when the site or location of the crime is disputed, whether the crime, or certain elements thereof, occurred within the geographical territorial limits of Maryland. Such a determination is a factual issue and in criminal cases in Maryland, factual disputes are for the trier of fact. See Md. Declaration of Rights, art. 23.

The Court of Special Appeals has decided this issue similarly. In *McDonald v. State,* 61 Md.App. 461, 487 A.2d 306 (1985), the defendant suggested on appeal that the Circuit Court for Montgomery County did not have jurisdiction to hear the case because, during part of the commission of the crimes, the defendant could have traveled into the District of Columbia or other states. The prosecution had presented substantial evidence that the crimes occurred within Maryland. The intermediate appellate court responded:

> It is incumbent upon the appellant to do more than make a bare allegation that the crime might have occurred outside of Maryland in order to sufficiently generate the issue of lack of jurisdiction. In *Carroll* [*v. State,* 19 Md.App. 179, 310 A.2d 161 (1973) ], we concluded that where an agreed statement of facts offered at trial demonstrated jurisdiction to be in Maryland, "jurisdiction may not now be defeated in this Court by the bald, self-serving averment of the appellant that *he has now determined that the offense was committed dehors this State." Id.* 19 Md.App. at 182, 310 A.2d 161 (emphasis in original).

*Id.* at 469, 487 A.2d at 310 (citations omitted).

Resolution of whether territorial jurisdiction is a factual determination for the jury does not end our inquiry. We next

territorial jurisdiction. As we have said, our Legislature has not similarly expanded the territorial jurisdiction of our trial courts.

must determine the State's burden of proof. The majority of states that have adopted the rule that territorial jurisdiction, when factually disputed, is an issue for the trier of fact also have held the prosecution must prove territorial jurisdiction beyond a reasonable doubt. *See, e.g., Willoughby,* 181 Ariz. at 538, 892 P.2d at 1327; *Lane,* 388 So.2d at 1028; *Holt,* 91 Ill.2d at 492, 64 Ill.Dec. 550, 440 N.E.2d at 108; *Liggins,* 524 N.W.2d at 184–85; *McKinney,* 553 N.E.2d at 863; *Baldwin,* 305 A.2d at 559; *Bragg,* 295 N.J.Super. at 465, 685 A.2d at 491; *McLaughlin,* 80 N.Y.2d at 472, 591 N.Y.S.2d 966, 606 N.E.2d at 1359–60; *Batdorf,* 293 N.C. at 494, 238 S.E.2d at 502–03; *see also* LaF.ave & Scott, *supra,* § 2.7(b), at 163. A minority of states require only that the state prove territorial jurisdiction by a preponderance of the evidence. *See, e.g., People v. Cavanaugh,* 44 Cal.2d 252, 262, 282 P.2d 53, 59 (1955), *cert. denied,* 350 U.S. 950, 76 S.Ct. 325, 100 L.Ed. 828 (1956). States requiring the beyond a reasonable doubt standard proffer many compelling reasons for imposing this higher standard. For instance, as noted by the Supreme Judicial Court of Maine in *Baldwin,* 305 A.2d at 559, proper jurisdiction, whether territorial or subject matter, is of vital import to the criminal court trying the defendant. Without it, the case cannot proceed and the judgment cannot be enforced. Imposing the higher standard of proof to prove territorial jurisdiction insures that the court trying the matter "does so with authority." *Id.* The Arizona Supreme Court has explained that "[i]t simply makes no sense in a single trial to require the factfinder to determine the existence of facts on the reasonable doubt standard for guilt purposes and the same facts on the preponderance standard for [territorial] jurisdiction purposes." *Willoughby,* 181 Ariz. at 538, 892 P.2d at 1327. Finally, one commentator has summarized the various rationales employed by other jurisdictions in requiring the higher standard with respect to territorial jurisdiction:

[M]ore recent cases have quite consistently held that jurisdiction is a matter which must be proved beyond a reasonable doubt. Even if the result is not compelled under *In*

*re Winship* [6] because jurisdiction is not one of "those facts essential to establishing criminality of the defendant's conduct," it is nonetheless sound. Use of the beyond a reasonable doubt standard minimizes the possibility that a defendant will be tried in one state for a crime actually committed elsewhere. Moreover, it makes it more likely that other states will afford full faith and credit to decisions regarding criminal jurisdiction, even though they are not constitutionally required to do so. There is also the practical consideration that using a lesser standard for a portion of the prosecution's case and the beyond a reasonable doubt standard for the rest would doubtless create confusion in the minds of jurors.

LaFave & Scott, *supra*, § 2.7(b), at 163 (footnotes omitted).

Judge Harrell, writing for the Court of Special Appeals in *Smith v. State*, 116 Md.App. 43, 55–56, 695 A.2d 575, 581–82, *cert. denied*, 347 Md. 254, 700 A.2d 1215 (1997), although not reaching the issue of the State's burden in proving territorial jurisdiction, did address the State's burden in proving proper venue. After noting that the defendant bore the initial burden of producing evidence to dispute venue, the intermediate appellate court held it was the State's burden to prove proper venue when put into dispute by the defendant. The court went on to hold that "[a]lthough the State must prove proper venue, it need do so only by a preponderance of the evidence." *Id.* at 56, 695 A.2d at 581. Discussing decisions from other jurisdictions, the Court of Special Appeals reasoned this standard was proper for proving venue because Maryland does not consider venue an essential element of a crime. The court concluded:

Certainly, if venue were an element of a crime in Maryland, it would have to be proved beyond a reasonable doubt. Nevertheless, this Court is convinced that venue generally

---

6. 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) (explaining that the United States Constitution requires that in order to convict a person of a crime, every fact necessary to constitute that crime must be proven by the prosecution beyond a reasonable doubt).

is not an element of a crime nor a fundamental right of an accused. Therefore, it need only be proved by a preponderance of the evidence.

*Id.* at 61, 695 A.2d at 584.

■ Contrary to venue, which concerns the location at which to hold a trial, territorial jurisdiction, although not an element of the crime, is a necessary and fundamental element of the broader concept of jurisdiction.[7] It is clear, therefore, that territorial jurisdiction is entirely necessary to proceed properly in any criminal case. Concomitant with the importance of a court's territorial jurisdiction is the degree of proof required by the State to prove to the trier of fact that territorial jurisdiction is, if put into dispute by the defendant, proper. Although territorial jurisdiction is not an element of the crime in Maryland, given that without territorial jurisdiction a court lacks jurisdiction and, thus, the power to enforce the judgment, we believe it manifest that the State prove to the trier of fact beyond a reasonable doubt that the offense occurred within the court's territorial jurisdiction. This elevated burden is consistent with the burden already imposed on the State that it must prove the defendant's guilt beyond a reasonable doubt. *See State v. Grady,* 276 Md. 178, 181, 345 A.2d 436, 438 (1975). As we have indicated, the Court of Special Appeals already has addressed the burden required in establishing territorial jurisdiction. *See Burral,* 118 Md.App. at 293, 702 A.2d at 783 ("Jurisdiction must be proved by the State beyond a reasonable doubt."); *Jones,* 51 Md.App. at 340, 443 A.2d at 978 ("Of course, territorial jurisdiction represents a factual question for the jury to resolve with appropriate instructions and the State has the burden of proof beyond a reasonable doubt.").

■ When the evidence generates a genuine issue and becomes, therefore, a factual determination for the trier of fact, the prosecution must prove territorial jurisdiction beyond

---

**7.** In the case *sub judice,* we are making no holding as to the fundamental nature of venue. We note that venue is addressed in Article 20 of the Maryland Declaration of Rights.

a reasonable doubt. Although not an element of a criminal offense, territorial jurisdiction is part and parcel to fundamental jurisdictional issues because the offense must have occurred within the geographic limits of the state in order for a court of that state to exercise its power over the defendant. In other words, the State must prove that a *Maryland* crime has been committed. Given the fundamental nature of territorial jurisdiction and the gravity of the error in wrongly determining it, we hold that in Maryland, once the issue is generated and disputed by more than mere bald allegations, prosecutors must prove territorial jurisdiction to the trier of fact beyond a reasonable doubt.

The record in this case reflects that the matter of territorial jurisdiction was disputed. The evidence was that the bodies were discovered in a car in the District of Columbia and that a gun had been discharged inside the passenger compartment. Based upon those facts, the other evidence presented, or lack thereof, respondent's defense counsel moved for a judgment of acquittal at the close of the State's case and again at the close of all the evidence. Counsel also requested that the jury be instructed to determine territorial jurisdiction, and then excepted to the charge that omitted the requested instruction. The trial judge ruled: "I believe that the jurisdiction issues in the case were ones for the court, not for the jury." Because the trial court in this case decided the matter of territorial jurisdiction as a matter of law and did not present the issue to the jury, even though properly and adequately disputed by the defendant, the case must be reversed and remanded. Accordingly, we shall affirm the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**